# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Amy Elizabeth Krekelberg,

               Plaintiff,

v.

Anoka County; City of Anoka; City of
Apple Valley; City of Becker; City of
Blaine; City of Bloomington; City of
Brooklyn Center; Carver County; City of
Columbia Heights; City of Coon Rapids;
City of Deephaven; City of Edina; City of
Elk River; City of Fridley; City of Glencoe;
City of Hastings; Hennepin County; City of
Jordan; City of Lakeville; City of Maple
Grove; City of Maplewood; City of Medina;
Metropolitan Council; Mille Lacs County;
City of Minneapolis; City of Minnetonka;
City of Mounds View; Minneapolis Park and
Recreation Board; City of New Brighton;
City of Plymouth; Ramsey County; City of
Ramsey; City of Richfield; City of
Roseville; Sherburne County; City of St.
Anthony; City of St. Francis; City of St.
Joseph; City of St. Paul; City of Stillwater;
City of Woodbury; Wright County;  Three
Rivers Park District; Michael Campion, in
his individual capacity as the Commissioner
of the Department of Public Safety; Ramona
Dohman, in her individual capacity as the
Commissioner of the Department of Public
Safety; Department of Public Safety Does
(1-30) acting in their individual capacity as
officers, supervisors, staff, employees,
independent contractors or agents of the
Minnesota Department of Public Safety;
John and Jane Does (1 – 1,000) acting in
their individual capacity as supervisors,
officers, deputies, staff, investigators,
employees or agents of the other

Civil File No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

governmental agencies; and Entity Does (1-
50) including cities, counties, municipalities,
and other entities sited in Minnesota,

                          Defendants.

For her Complaint, for which she demands trial by jury on all claims so triable,

Plaintiff Amy Elizabeth Krekelberg ("Krekelberg") hereby states and alleges as follows:

## INTRODUCTION

This is a case to redress the invasion of privacy and abuse of power by numerous

law-enforcement personnel and public employees who impermissibly accessed the

Minnesota Department of Public Safety's system for maintaining the personal, private

information of Minnesota citizens.  Officers and employees from over 40 different law-

enforcement agencies and entities chose to violate federal law, Minnesota and federal

policy and the constitutionally and statutorily protected privacy rights of Plaintiff Amy

Elizabeth Krekelberg, a respected police officer, almost 1,000 times.

These personnel violated the federal Driver's Privacy Protection Act ("DPPA")

and violated Krekelberg's civil rights under 42 U.S.C. § 1983, by unlawfully accessing

her protected driver's license information without any legitimate purpose.  More

disturbing, these personnel, charged with protecting and serving the public, knowingly

abused their positions of trust to invade the private life of Krekelberg, without her

knowledge or consent, and without ever informing her of their activities.  They did so for

personal reasons, for curiosity, for sexual interest, for physical attraction, for animus

towards female police officers, and out of jealousy of successful female police officers.

The utter disregard for her privacy rights by law-enforcement personnel, public employees, and others caused Krekelberg emotional distress and a logical fear for her personal safety.

The State of Minnesota, itself, has found that at least 50% of all officers statewide are engaged in the use of this database for impermissible purposes, and therefore violating federal civil and criminal laws.  Moreover, the access permitted to law-enforcement officers, public employees, and others is easily obtained and makes highly private information available, including health information and social security numbers. At no time have the Commissioners, including the current Commissioner, taken adequate steps to prevent these intrusions.  They have disclosed this information to persons simply because of their membership in a class, such as government employees, police officers, or insurance personnel, rather than ascertaining a specific, permissible purpose for the obtaining of this information as required by the DPPA.  As a result, the information is readily available to and is easily and often accessed by persons in those classes, or possessing that status, without having and without expressing a permissible purpose. Krekelberg has no control over the Defendants accessing of her personal information, and impermissible, and inappropriate accessing has been deliberately concealed and conducted in a surreptitious fashion.  These Defendants are the window-peepers of the electronic data age.  Through lax policies and apathetic enforcement of the law, these officials and governmental units have caused direct damage to Krekelberg, just as they have trampled upon the clear legislative protections of all citizens' right to feel secure in their privacy.

3

**General Background of Law and Facts**

1.      This is an action for injunctive relief and money damages for injuries

sustained when personnel from various entities in Minnesota illegally obtained

Krekelberg's private, personal and confidential driver's license information without a

legitimate or permissible law-enforcement purpose or any other lawful purpose, as set

forth in the Introduction to this Complaint, which is incorporated into this paragraph.

2.      These law-enforcement personnel, public employees, and others viewed

and obtained Krekelberg's private information over nine hundred and seventy-five (975)

times between 2003 and 2013.

3.      Attached to this Complaint as Exhibit A is a copy of an audit prepared by

the Minnesota Department of Public Safety showing the accesses of Krekelberg's driver's

license information by name, not license plate number, with her driver's license number

removed, and showing the "station," meaning the police department, sheriff's office, or

other government entity through which the officer accessed her information.

4.      Without legitimate, permissible reasons, these individuals obtained

Krekelberg's private information from Department of Vehicle Services' ("DVS")

database or Bureau of Criminal Apprehension ("BCA") database.

5.      Upon information and belief, these individuals further impermissibly used

or disclosed Krekelberg's private information.

6.      Each unauthorized, impermissible use, disclosure, obtainment, or access of

her private information, made while acting under color of state and law, violated

Krekelberg's federal civil rights and constituted behavior prohibited by the federal

4

constitution, federal statute, Minnesota statute, common law, and agency and

departmental regulations prohibiting some or all of the conduct engaged in by Defendants

in this case.

7.     Krekelberg brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the

Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331

and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*,

and Minnesota common law invasion of privacy.

8.     The aforementioned statutory and constitutional provisions confer original

jurisdiction of this Court over this matter.

9.     This Court has jurisdiction over Krekelberg's state law claims pursuant to

28 U.S.C. § 1367.

10.     The amount in controversy exceeds $75,000, excluding interests and costs.

## The Parties

11.     Amy Elizabeth Krekelberg is, and was at all times material herein, a citizen

of the United States and a resident of the State of Minnesota.

12.     Defendant Anoka County is a county in Minnesota, which can be sued

under Minn. Stat. § 466.01 *et seq.*

13.     Defendant Carver County is a county in Minnesota, which can be sued

under Minn. Stat. § 466.01 *et seq.*

14.     Defendant Hennepin County is a county in Minnesota, which can be sued

under Minn. Stat. § 466.01 *et seq.*

15.     Defendant Mille Lacs County is a county in Minnesota, which can be sued

under Minn. Stat. § 466.01 *et seq.*

16.     Defendant Ramsey County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

17.     Defendant Sherburne County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

18.     Defendant Wright County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

19.     Defendant City of Anoka is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

20.     Defendant City of Apple Valley is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

21.     Defendant City of Becker is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

22.     Defendant City of Blaine is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

23.     Defendant City of Bloomington is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

24.     Defendant City of Brooklyn Center is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

25.     Defendant City of Columbia Heights is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

26.     Defendant City of Coon Rapids is a home rule charter city in Minnesota,

which can be sued under Minn. Stat. § 466.01 *et seq.*

27.    Defendant City of Deephaven is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

28.    Defendant City of Edina is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

29.    Defendant City of Elk River is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

30.    Defendant City of Fridley is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

31.    Defendant City of Glencoe is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

32.    Defendant City of Hastings is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

33.    Defendant City of Jordan is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

34.    Defendant City of Lakeville is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

35.    Defendant City of Maple Grove is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

36.    Defendant City of Maplewood is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

37.    Defendant City of Medina is a statutory city in Minnesota, which can be

sued under Minn. Stat. § 466.01 *et seq.*

38.    Defendant City of Minneapolis is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

39.    Defendant City of Minnetonka is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

40.    Defendant City of Mounds View is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

41.    Defendant City of New Brighton is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

42.    Defendant City of Plymouth is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

43.    Defendant City of Ramsey is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

44.    Defendant City of Richfield is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

45.    Defendant City of Roseville is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

46.    Defendant City of St. Anthony is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

47.    Defendant City of St. Francis is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

48.    Defendant City of St. Joseph is a statutory city in Minnesota, which can be

sued under Minn. Stat. § 466.01 *et seq.*

49.     Defendant City of St. Paul is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

50.     Defendant City of Stillwater is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

51.     Defendant City of Woodbury is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

52.     All the cities and counties listed in the preceding paragraphs are "municipalities" as defined by Minn. Stat. § 466.01, subd. 1, and can be sued under Minn. Stat. § 466.01 *et seq.*

53.     Defendant Metropolitan Council is a regional planning agency serving the Twin Cities seven-county metropolitan area, which can be sued under Minn. Stat. § 473 et. seq.

54.     The Board of Commissioners of the Minneapolis Park and Recreation Board is an independently elected, semi-autonomous body responsible for maintaining and developing the Minneapolis Park system; the Board was created by the Minnesota Legislature in 1883 and is itself a suable entity under Minn. Stat. § 466.01 *et seq*.

55.     The Board of Commissioners of the Three Rivers Park District is an independently elected, semi-autonomous body responsible for maintaining and developing parks in suburban Hennepin County; the Board was established by the Minnesota State Legislature in 1957 and is itself a suable entity under Minn. Stat. § 466.01 *et seq.*

56.     Defendants Entity Does (1-50) are various unknown municipalities as defined by Minn. Stat. § 466.01, subd. 1 that can be sued under Minn. Stat. § 466.01 *et seq.* or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. § 1346 or other statutes.

57.     Krekelberg will refer to the entities named in paragraphs 12 to 55 above, along with the Entity Does, collectively as the "Defendant Entities" or "Entity Defendants."

58.     Defendants John and Jane Does (1-1000), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other federal, state, county or municipal entities in Minnesota.

59.     Krekelberg will refer to the individual Defendants (with the exception of the "Commissioner Defendants," "Department of Public Safety Defendants" and "Supervisor Defendants" defined below), including John and Jane Does, collectively as the "Individual Defendants" or "Defendant Individuals."

60.     Krekelberg will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

61.     Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as the Commissioner

of the Minnesota Department of Public Safety.

62.     Defendant Mona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen, of the United States and a resident of the State of Minnesota, duly appointed and acting in her individual capacity as the Commissioner of the Minnesota Department of Public Safety.

63.     Krekelberg will refer to the Defendants Campion and Dohman collectively, as the "Commissioner Defendants" or "Defendant Commissioners."

64.     Defendants DPS Does (1-30), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

65.     Krekelberg will refer to officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the DVS database or BCA database, each of which contained Krekelberg's private driver's license information (collectively or individually, "DPS Databases" as "Department of Public Safety Does" or "DPS Does.")

## FACTUAL ALLEGATIONS

**Despite Krekelberg Being a Highly Respected Police Officer, Including Being Named Officer of the Year for her Department, She Was Frequently Subjected to Unwanted Attention from Other Law-Enforcement Officers**

66.     From 2004 to 2007, Krekelberg worked in security and loss prevention for

the cities of Roseville, Minneapolis, St. Paul, Blaine, Maple Grove, Maplewood, Apple

Valley, Woodbury and Bloomington.

67.     In those positions, she would have frequent contact with law-enforcement

personnel.

68.     Krekelberg joined the Minneapolis Park Police Department in 2005,

working as a Park Agent

69.     Krekelberg became a Park Police Officer in 2008.

70.     From 2008 to 2012, Krekelberg worked as an Officer for the Minneapolis

Park Police Department.

71.     The Minneapolis Park Police Department is operated by the Minneapolis

Park and Recreation Board.

72.     In 2009 she began dating a police officer who had previously been her

trainer, and eventually married him.  That started an incredible amount of gossip and

recrimination, as many officers accused her of dating him and sleeping with him just to

pass her training, which was patently false.  Many rumors circulated, and Krekelberg was

constantly asked questions about where she was living, and who she was dating.

73.     Several times Krekelberg was told by supervisors to "make sure her address

was correct in our system and on her driver's license," which was not demanded of other

officers to the best of her knowledge, and on information and belief this was to determine

if she were living with her then boyfriend, whom she later married.

74.     Both before and after her marriage Krekelberg was asked out on dates and propositioned by numerous other officers.  This was so oppressive that officers were told to "back off" by her supervisors and trainers.

75.     Officers did not "back off" but intensified their unwanted attentions, and Krekelberg was constantly asked out on dates even after refusing them, by mainly male officers but also on occasion by female officers; was repeatedly forced to listen to sexual comments; text messages; asked if she were single; had not given them her telephone number; and was physically touched many times on the posterior and even had her hair pulled.

76.     In 2010, Minneapolis Park Police Department Chief Linda Bergstrom presented Krekelberg with the Officer of the Year Award.

77.     In receiving the award, Chief Bergstrom praised Krekelberg for her dedication to the parks and surrounding neighborhoods, hard work, attention to detail and pride in her work.

78.     Unwanted, unsolicited, and unwelcome attentions, gestures, comments, and behavior, including physical contact, increased after her Officer of the Year Award, as did, Krekelberg is aware in retrospect, the accesses of her private, personal information.

79.     In 2012, Krekelberg joined the Minneapolis Police Department.

80.     She was on one occasion asked her full name and shortly asked out on a date by an officer; she was not aware then that her information was obtained by these officers and likely by their partners on the DVS database.

81.     This pattern repeated itself several times, being asked for her full name, even without being asked out on a date later; the audit lists a number of obtainments by officers in Saint Paul about the time they were asking for her full name; Krekelberg never worked for the Saint Paul Police Department.

82.     Krekelberg has served honorably as a police officer and never been disciplined.

83.     Krekelberg states that none of the officers obtained, used or disclosed her information for a purpose permitted under the DPPA.

84.     Krekelberg further states that all the above events and circumstances, particularly Krekelberg's relative youth, her gender, her physical attractiveness, her having dated and married a police officer, her entry into a male-dominated profession, and her great success at that profession, and resultant jealousy, curiosity, sexual interest, and other human emotions, were the reasons and purposes why her personal information was obtained and used by other police officers and others so many times, and none of them are permissible purposes under the DPPA.

**Law Enforcement Officers and Other Personnel from Entities Across Minnesota Viewed Plaintiffs' Private Information Outside the Scope of Any Investigation or Official Police Business**

85.     The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers. ("DVS Database").

86.     The DVS Database contains "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license

14

photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota.

87.     The Minnesota Driver's License Application states: "you must provide your Social Security number…"

88.     According to the Minnesota Driver's License Application, "[i]f you don't provide the information requested, DPS cannot issue you a driver's permit, license, or identification card, and your existing driving privileges, may be affected."

89.     As early as 2003, Individual Defendants began looking up Krekelberg's Private Data on the DVS Database.

90.     After the Individual Defendants looked up Krekelberg's Private Data, they gained knowledge of the contents of the Private Data.  In gaining such knowledge, the Individual Defendants obtained Krekelberg's Private Data.

91.     Exhibit A, incorporated herein, reflects excerpts of an audit provided by DPS showing each time Krekelberg's Private Data was obtained or used by an Individual Defendant.

92.     Each act of the Individual Defendants in obtaining Krekelberg's Private Data also constituted a disclosure by the Commissioner Defendants, because any release or access of information, whether permitted or not, necessarily requires a disclosure; and the method of setting up the DVS Database and of providing constant access to it constituted a disclosure of Private Data under the DPPA.

93.     Column "EsupportStationName" of Exhibit A, incorporated herein, reflect

the department or entity which, upon information and belief, employed the Individual

Defendant that obtained or used Krekelberg's Private Data.

94.     Column "EsupportPath" of Exhibit A, incorporated herein, reflect the type

of Private Data that was obtained or used by the Individual Defendant.

95.     Columns "AccessDay" and "AccessDate," of Exhibit A, incorporated

herein, reflect the day of the week, date, and time when the Individual Defendant

obtained or used Krekelberg's Private Data.

96.     DPS does not provide the name of the individual who obtained or used

Krekelberg's Private Data.

97.     Each line of Exhibit A, incorporated herein, reflects the audit of each time

Krekelberg's information, upon information and belief, was obtained or used by an

Individual Defendant without a permissible purpose.

98.     Officers employed by, licensed by, or otherwise accessing through Anoka

County impermissibly accessed Krekelberg's Private Data five times.

99.     Defendant Anoka County's obtainment and use of Plaintiff's personal

information was not for any use in carrying out any law enforcement, governmental,

judicial or litigation-related function.

100.    Plaintiff has never been charged with or suspected of committing a crime in

Anoka County, has never been involved in any civil, criminal, administrative or arbitral

proceeding in or involving Anoka County, and there was no legitimate reason for Plaintiff

to have been the subject of any investigation by Anoka County.

101.    Rather, Anoka County's obtainment and use of Plaintiff's personal

16

information was for purposes that were purely personal to Anoka County's personnel.

102.    Officers employed by, licensed by, or otherwise accessing through Carver County impermissibly accessed Krekelberg's Private Data one time.

103.    Defendant Carver County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

104.    Plaintiff has never been charged with or suspected of committing a crime in Carver County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Carver County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Carver County.

105.    Rather, Carver County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Carver County's personnel.

106.    Officers employed by, licensed by, or otherwise accessing through Hennepin County impermissibly accessed Krekelberg's Private Data one time.

107.    Defendant Hennepin County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

108.    Plaintiff has never been charged with or suspected of committing a crime in Hennepin County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Hennepin County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Hennepin County.

109.    Rather, Hennepin County's obtainment and use of Plaintiff's personal

17

information was for purposes that were purely personal to Hennepin County's personnel.

110.   Officers employed by, licensed by, or otherwise accessing through Mille Lacs County impermissibly accessed Krekelberg's Private Data one time.

111.   Defendant Mille Lacs County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

112.   Plaintiff has never been charged with or suspected of committing a crime in Mille Lacs County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Mille Lacs County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Mille Lacs County.

113.   Rather, Mille Lacs County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Mille Lacs County's personnel.

114.   Officers employed by, licensed by, or otherwise accessing through Ramsey County impermissibly accessed Krekelberg's Private Data ten (10) times.

115.   Defendant Ramsey County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

116.   Plaintiff has never been charged with or suspected of committing a crime in Ramsey County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Ramsey County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Ramsey County.

117.   Rather, Ramsey County's obtainment and use of Plaintiff's personal

information was for purposes that were purely personal to Ramsey County's personnel.

118.    Officers employed by, licensed by, or otherwise accessing through Sherburne County impermissibly accessed Krekelberg's Private Data two times.

119.    Defendant Sherburne County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

120.    Plaintiff has never been charged with or suspected of committing a crime in Sherburne County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Sherburne County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Sherburne County.

121.    Rather, Sherburne County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Sherburne County's personnel.

122.    Officers employed by, licensed by, or otherwise accessing through Wright County impermissibly accessed Krekelberg's Private Data one time.

123.    Defendant Wright County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

124.    Plaintiff has never been charged with or suspected of committing a crime in Wright County, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Wright County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Wright County.

125.    Rather, Wright County's obtainment and use of Plaintiff's personal

information was for purposes that were purely personal to Wright County's personnel.

126.    Officers employed by, licensed by, or otherwise accessing through the City of Anoka impermissibly accessed Krekelberg's Private Data eleven (11) times.

127.    Defendant City of Anoka's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

128.    Plaintiff has never been charged with or suspected of committing a crime in the City of Anoka, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Anoka, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Anoka.

129.    Rather, the City of Anoka's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Anoka's personnel.

130.    Officers employed by, licensed by, or otherwise accessing through the City of Apple Valley impermissibly accessed Krekelberg's Private Data one time.

131.    Defendant City of Apple Valley's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

132.    Plaintiff has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Apple Valley, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Apple Valley.

133.    Rather, the City of Apple Valley's obtainment and use of Plaintiff's

personal information was for purposes that were purely personal to the City of Apple Valley's personnel.

134.   Officers employed by, licensed by, or otherwise accessing through the City of Becker impermissibly accessed Krekelberg's Private Data one time.

135.   Defendant City of Becker's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

136.   Plaintiff has never been charged with or suspected of committing a crime in the City of Becker, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Becker, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Becker.

137.   Rather, the City of Becker's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Becker's personnel.

138.   Officers employed by, licensed by, or otherwise accessing through the City of Blaine impermissibly accessed Krekelberg's Private Data twelve (12) times.

139.   Defendant City of Blaine's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

140.   Plaintiff has never been charged with or suspected of committing a crime in the City of Blaine, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Blaine, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Blaine.

21

141.   Rather, the City of Blaine's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Blaine's personnel.

142.   Officers employed by, licensed by, or otherwise accessing through the City of Bloomington impermissibly accessed Krekelberg's Private Data six times.

143.   Defendant City of Bloomington's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

144.   Plaintiff has never been charged with or suspected of committing a crime in the City of Bloomington, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Bloomington, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Bloomington.

145.   Rather, the City of Bloomington's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Bloomington's personnel.

146.   Officers employed by, licensed by, or otherwise accessing through the City of Brooklyn Center impermissibly accessed Krekelberg's Private Data six times.

147.   Defendant City of Brooklyn Center's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

148.   Plaintiff has never been charged with or suspected of committing a crime in the City of Brooklyn Center, has never been involved in any civil, criminal,

administrative or arbitral proceeding in or involving the City of Brooklyn Center, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Brooklyn Center.

149.    Rather, the City of Brooklyn Center's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Brooklyn Center's personnel.

150.    Officers employed by, licensed by, or otherwise accessing through the City of Columbia Heights impermissibly accessed Krekelberg's Private Data one time.

151.    Defendant City of Columbia Heights' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

152.    Plaintiff has never been charged with or suspected of committing a crime in the City of Columbia Heights, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Columbia Heights, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Columbia Heights.

153.    Rather, the City of Columbia Heights' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Columbia Heights' personnel.

154.    Officers employed by, licensed by, or otherwise accessing through the City of Coon Rapids impermissibly accessed Krekelberg's Private Data eleven (11) times.

155.    Defendant City of Coon Rapids' obtainment and use of Plaintiff's personal

information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

156.    Plaintiff has never been charged with or suspected of committing a crime in the City of Coon Rapids, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Coon Rapids, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Coon Rapids.

157.    Rather, the City of Coon Rapids' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Coon Rapids' personnel.

158.    Officers employed by, licensed by, or otherwise accessing through the City of Deephaven impermissibly accessed Krekelberg's Private Data two times.

159.    Defendant City of Deephaven's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

160.    Plaintiff has never been charged with or suspected of committing a crime in the City of Deephaven, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Deephaven, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Deephaven.

161.    Rather, the City of Deephaven's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Deephaven's

personnel.

162.    Officers employed by, licensed by, or otherwise accessing through the City of Edina impermissibly accessed Krekelberg's Private Data one time.

163.    Defendant City of Edina's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

164.    Plaintiff has never been charged with or suspected of committing a crime in the City of Edina, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Edina, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Edina.

165.    Rather, the City of Edina's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Edina's personnel.

166.    Officers employed by, licensed by, or otherwise accessing through the City of Elk River impermissibly accessed Krekelberg's Private Data one time.

167.    Defendant City of Elk River's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

168.    Plaintiff has never been charged with or suspected of committing a crime in the City of Elk River, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Elk River, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Elk River.

169.    Rather, the City of Elk River's obtainment and use of Plaintiff's personal

information was for purposes that were purely personal to the City of Elk River's personnel.

170.    Officers employed by, licensed by, or otherwise accessing through the City of Fridley impermissibly accessed Krekelberg's Private Data one time.

171.    Defendant City of Fridley's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

172.    Plaintiff has never been charged with or suspected of committing a crime in the City of Fridley, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Fridley, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Fridley.

173.    Rather, the City of Fridley's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Fridley's personnel.

174.    Officers employed by, licensed by, or otherwise accessing through the City of Glencoe impermissibly accessed Krekelberg's Private Data one time.

175.    Defendant City of Glencoe's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

176.    Plaintiff has never been charged with or suspected of committing a crime in the City of Glencoe, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Glencoe, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Glencoe.

177.    Rather, the City of Glencoe's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Glencoe's personnel.

178.    Officers employed by, licensed by, or otherwise accessing through the City of Hastings impermissibly accessed Krekelberg's Private Data two times.

179.    Defendant City of Hastings' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

180.    Plaintiff has never been charged with or suspected of committing a crime in the City of Hastings, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Hastings, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hastings.

181.    Rather, the City of Hastings' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hastings' personnel.

182.    Officers employed by, licensed by, or otherwise accessing through the City of Jordan impermissibly accessed Krekelberg's Private Data one time.

183.    Defendant City of Jordan's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

184.    Plaintiff has never been charged with or suspected of committing a crime in the City of Jordan, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Jordan, and there was no legitimate reason

for Plaintiff to have been the subject of any investigation by the City of Jordan.

185.   Rather, the City of Jordan's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Jordan's personnel.

186.   Officers employed by, licensed by, or otherwise accessing through the City of Lakeville impermissibly accessed Krekelberg's Private Data one time.

187.   Defendant City of Lakeville's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

188.   Plaintiff has never been charged with or suspected of committing a crime in the City of Lakeville, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Lakeville, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Lakeville.

189.   Rather, the City of Lakeville's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Lakeville's personnel.

190.   Officers employed by, licensed by, or otherwise accessing through the City of Maple Grove impermissibly accessed Krekelberg's Private Data one time.

191.   Defendant City of Maple Grove's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

192.   Plaintiff has never been charged with or suspected of committing a crime in the City of Maple Grove, has never been involved in any civil, criminal, administrative or

arbitral proceeding in or involving the City of Maple Grove, and there was no legitimate

reason for Plaintiff to have been the subject of any investigation by the City of Maple

Grove.

193.    Rather, the City of Maple Grove's obtainment and use of Plaintiff's

personal information was for purposes that were purely personal to the City of Maple

Grove's personnel.

194.    Officers employed by, licensed by, or otherwise accessing through the City

of Maplewood impermissibly accessed Krekelberg's Private Data four times.

195.    Defendant City of Maplewood's obtainment and use of Plaintiff's personal

information was not for any use in carrying out any law enforcement, governmental,

judicial or litigation-related function.

196.    Plaintiff has never been charged with or suspected of committing a crime in

the City of Maplewood, has never been involved in any civil, criminal, administrative or

arbitral proceeding in or involving the City of Maplewood, and there was no legitimate

reason for Plaintiff to have been the subject of any investigation by the City of

Maplewood.

197.    Rather, the City of Maplewood's obtainment and use of Plaintiff's personal

information was for purposes that were purely personal to the City of Maplewood's

personnel.

198.    Officers employed by, licensed by, or otherwise accessing through the City

of Medina impermissibly accessed Krekelberg's Private Data one time.

199.    Defendant City of Medina's obtainment and use of Plaintiff's personal

information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

200.    Plaintiff has never been charged with or suspected of committing a crime in the City of Medina, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Medina, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Medina.

201.    Rather, the City of Medina's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Medina's personnel.

202.    Officers employed by, licensed by, or otherwise accessing through Metropolitan Council impermissibly accessed Krekelberg's Private Data three times.

203.    Metropolitan Council obtainments appear as "Metro Transit PD" on the audit.

204.    Defendant Metropolitan Council's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

205.    Plaintiff has never been charged with or suspected of committing a crime on or towards Metropolitan Council property, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving Metropolitan Council, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Metropolitan Council.

206.    Rather, Metropolitan Council's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Metropolitan Council's

personnel.

207.    Officers employed by, licensed by, or otherwise accessing through the City of Minneapolis impermissibly accessed Krekelberg's Private Data five hundred seventy five (575) times.

208.    Defendant City of Minneapolis' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

209.    Other than three traffic violations, which she has excluded from Exhibit A and this lawsuit, Plaintiff has never been charged with or suspected of committing a crime in the City of Minneapolis, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Minneapolis, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Minneapolis.

210.    Plaintiff has been employed as a police officer for the City of Minneapolis Police Department since 2012.

211.    Rather, the City of Minneapolis' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Minneapolis' personnel.

212.    Officers employed by, licensed by, or otherwise accessing through the City of Minnetonka impermissibly accessed Krekelberg's Private Data three times.

213.    Defendant City of Minnetonka's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental,

judicial or litigation-related function.

214. Plaintiff has never been charged with or suspected of committing a crime in the City of Minnetonka, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Minnetonka, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Minnetonka.

215. Rather, the City of Minnetonka's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Minnetonka's personnel.

216. Officers employed by, licensed by, or otherwise accessing through the City of Mounds View impermissibly accessed Krekelberg's Private Data three times.

217. Defendant City of Mounds View's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

218. Plaintiff has never been charged with or suspected of committing a crime in the City of Mounds View, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Mounds View, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Mounds View.

219. Rather, the City of Mounds View's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Mounds View's personnel.

220.    Officers employed by, licensed by, or otherwise accessing through the Minneapolis Park and Recreation Board impermissibly accessed Krekelberg's Private Data ninety nine (99) times.

221.    Defendant Minneapolis Park and Recreation Board obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

222.    Plaintiff has never been charged with or suspected of committing a crime in the area of the Minneapolis Park and Recreation Board, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the Minneapolis Park and Recreation Board, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the Minneapolis Park and Recreation Board.

223.    Plaintiff was employed by the Minneapolis Park and Recreation Board as a Park Agent and a police officer from 2005 to 2012

224.    Rather, the Minneapolis Park and Recreation Board's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the Minneapolis Park and Recreation Board's personnel.

225.    Officers employed by, licensed by, or otherwise accessing through the City of New Brighton impermissibly accessed Krekelberg's Private Data five times.

226.    Defendant City of New Brighton's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

227.    Plaintiff has never been charged with or suspected of committing a crime in

33

the City of New Brighton, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of New Brighton, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of New Brighton.

228. Rather, the City of New Brighton's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of New Brighton's personnel.

229. Officers employed by, licensed by, or otherwise accessing through the City of Plymouth impermissibly accessed Krekelberg's Private Data two times.

230. Defendant City of Plymouth's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

231. Plaintiff has never been charged with or suspected of committing a crime in the City of Plymouth, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Plymouth, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Plymouth.

232. Rather, the City of Plymouth's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Plymouth's personnel.

233. Officers employed by, licensed by, or otherwise accessing through the City of Ramsey impermissibly accessed Krekelberg's Private Data five times.

234. Defendant City of Ramsey's obtainment and use of Plaintiff's personal

34

information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

235. Plaintiff has never been charged with or suspected of committing a crime in the City of Ramsey, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Ramsey, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Ramsey.

236. Rather, the City of Ramsey's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Ramsey's personnel.

237. Officers employed by, licensed by, or otherwise accessing through the City of Richfield impermissibly accessed Krekelberg's Private Data one time.

238. Defendant City of Richfield's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

239. Plaintiff has never been charged with or suspected of committing a crime in the City of Richfield, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Richfield, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Richfield.

240. Rather, the City of Richfield's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Richfield's personnel.

241. Officers employed by, licensed by, or otherwise accessing through the City of Roseville impermissibly accessed Krekelberg's Private Data seventy-two (72) times.

242.   Defendant City of Roseville's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

243.   Plaintiff has never been charged with or suspected of committing a crime in the City of Roseville, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Roseville, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Roseville.

244.   Rather, the City of Roseville's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Roseville's personnel.

245.   Officers employed by, licensed by, or otherwise accessing through the City of St. Anthony impermissibly accessed Krekelberg's Private Data twenty-one (21) times.

246.   Plaintiff reported several crimes to St. Anthony and was pulled over once for a moving violation, which would explain several of the obtainments by it.  Plaintiff has excluded those obtainments from her count and from this lawsuit.

247.   Other than the permissible obtainments that Plaintiff excluded, Defendant City of St. Anthony's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

248.   Other than the one moving violation and the crimes she reported, Plaintiff has never been charged with or suspected of committing a crime in the City of St. Anthony, has never been involved in any civil, criminal, administrative or arbitral

proceeding in or involving the City of St. Anthony, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. Anthony.

249. Rather, other than the permissible obtainments that Plaintiff excluded from this lawsuit, the City of St. Anthony's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. Anthony's personnel.

250. Officers employed by, licensed by, or otherwise accessing through the City of St. Francis impermissibly accessed Krekelberg's Private Data one time.

251. Defendant City of St. Francis' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

252. Plaintiff has never been charged with or suspected of committing a crime in the City of St. Francis, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of St. Francis, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. Francis.

253. Rather, the City of St. Francis' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. Francis' personnel.

254. Officers employed by, licensed by, or otherwise accessing through the City of St. Joseph impermissibly accessed Krekelberg's Private Data one time.

255. Defendant City of St. Joseph's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental,

judicial or litigation-related function.

256.   Plaintiff has never been charged with or suspected of committing a crime in the City of St. Joseph, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of St. Joseph, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. Joseph.

257.   Rather, the City of St. Joseph's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. Joseph's personnel.

258.   Officers employed by, licensed by, or otherwise accessing through the City of St. Paul impermissibly accessed Krekelberg's Private Data fifty-four (54) times.

259.   Defendant City of St. Paul's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

260.   Other than two traffic violations, which Plaintiff has excluded from Exhibit A and this lawsuit, Plaintiff has never been charged with or suspected of committing a crime in the City of St. Paul, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of St. Paul, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. Paul.

261.   Rather, the City of St. Paul's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. Paul's personnel.

262.   Officers employed by, licensed by, or otherwise accessing through the City

38

of Stillwater impermissibly accessed Krekelberg's Private Data two times.

263.    Defendant City of Stillwater's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

264.    Plaintiff has never been charged with or suspected of committing a crime in the City of Stillwater, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the City of Stillwater, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Stillwater.

265.    Rather, the City of Stillwater's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Stillwater's personnel.

266.    Officers employed by, licensed by, or otherwise accessing through the Three Rivers Park District impermissibly accessed Krekelberg's Private Data one time.

267.    Defendant Three Rivers Park District's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial or litigation-related function.

268.    Plaintiff has never been charged with or suspected of committing a crime to or at park operated by the Three Rivers Park District, has never been involved in any civil, criminal, administrative or arbitral proceeding in or involving the Three Rivers Park District, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the Three Rivers Park District.

269.    Rather, the Three Rivers Park District's obtainment and use of Plaintiff's

personal information was for purposes that were purely personal to the Three Rivers Park
District's personnel.

270.    Officers employed by, licensed by, or otherwise accessing through the City
of Woodbury impermissibly accessed Krekelberg's Private Data four times.

271.    Defendant City of Woodbury's obtainment and use of Plaintiff's personal
information was not for any use in carrying out any law enforcement, governmental,
judicial or litigation-related function.

272.    Plaintiff has never been charged with or suspected of committing a crime in
the City of Woodbury, has never been involved in any civil, criminal, administrative or
arbitral proceeding in or involving the City of Woodbury, and there was no legitimate
reason for Plaintiff to have been the subject of any investigation by the City of Woodbury.

273.    Rather, the City of Woodbury's obtainment and use of Plaintiff's personal
information was for purposes that were purely personal to the City of Woodbury's
personnel.

274.    Officers or employees employed by the Entity Defendants, along with those
Individual Defendants currently identified as John and Jane Does, obtained or used
Krekelberg's Private Data approximately 987 times.

275.    Each of the above accesses was committed knowingly; each of the above
accesses was impermissible, meaning that the Defendants had no law-enforcement reason
for accessing the information.

276.    Defendants accessed the information out of curiosity or for personal
reasons completely unrelated to their position as law-enforcement officers, public

employees, or in their job functions.

277.     Krekelberg being named Officer of the Year by the Minneapolis Park Police in 2010, spurred much attention in the law-enforcement community.

278.     As a community, law-enforcement officers are particularly known to spread gossip and rumors, for a variety of reasons, including that they tend to be and perceive themselves as a close-knit community; many of them have attended academy or other training together, and remain in touch afterward, accounting on many occasions for the reason why someone in a remote county will have accessed Krekelberg's private information, as that person may have gone to training with or simply know another officer in the Twin Cities metropolitan area who in turn knows Krekelberg; the law-enforcement field tends to be strongly male-dominated, so that the visible success of a female police officer like Krekelberg is a source of interest, comment, rumor and gossip, particularly when she is young and physically attractive, like Krekelberg.

279.     Krekelberg is a young, female, divorced woman, who received many advances from law-enforcement officers.

280.     Krekelberg's ex-husband was a law-enforcement officer for Minneapolis Park Police Department.

281.     Individual Defendants viewed Krekelberg's Private Data from her State-issued driver's license including her home address, color photograph or image, date of birth, eye color, height, weight, driver identification number, and upon information and belief, medical and social security information.

282.     Curiosity about Krekelberg or other personal reasons are not purposes

permitted for obtaining information under the DPPA.

283.    The Individual Defendants mentioned above who made these accesses did so using Krekelberg's name, not pursuant to a license plate look-up, and there is seldom any law-enforcement function that would permit accessing Krekelberg's private information by name; Krekelberg was not involved in any criminal activity nor suspected of any such activity; she had not committed any act that would entitle Entity Defendants and Individual Defendants to access her information under any of the permissible exceptions; to the extent any such permissible reason could exist, Krekelberg has eliminated permissible access from the accesses here complained of; and no Defendant has proposed a valid, credible reason for accessing Krekelberg's information.

284.    Under the direction of the Commissioner Defendants, DPS, and DPS Does, knowingly created the DVS Database that includes Krekelberg's Private Data and the system for law-enforcement personnel to access to that information.

285.    DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly maintained and updated the DVS Database that included Krekelberg's Private Data.

286.    DPS Commissioners and DPS Does authored the Minnesota Driver's License Application, which states "your personal information may be *disclosed* as authorized by United States Code, title 18, section 2721." (emphasis added).

287.    DPS Commissioners and DPS Does made the decisions for establishing, ordering the structure of, and determining the persons, agencies and individuals to whom they would disclose the database.

288. The disclosure of information was made by providing a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a purpose permitted under the DPPA.

289. This form of disclosure was and is used not only for law-enforcement personnel but other recipients who have access to the database, including non-government employees such as cars dealers, private investigators and insurance companies, who comprise about half of the persons who have been granted access to this database.

290. DPS Does and Commissioner Defendants failed to use reasonable care in so disclosing the information in the database.

291. DPS Does and Commissioner Defendants made no reasonable effort nor directed any subordinate to make any reasonable effort to require that the specified purpose of the disclosure was legitimate and would be adhered to by the person to whom the data was disclosed.

292. DPS Does and Commissioner Defendants failed to reasonably ascertain or ensure that the persons to whom it was disclosed would use it permissibly.

293. DPS Does and Commissioner Defendants failed to ascertain or ensure specifically that law-enforcement personnel would use it permissibly, that is, for a law enforcement-function.

294. DPS Does and Commissioner Defendants failed to ascertain or ensure that the persons to whom it was disclosed would use it exclusively for a law-enforcement function.

295.   DPS Does and Commissioner Defendants failed to provide reasonably adequate training in the permissible uses of the database.

296.   DPS Does and Commissioner Defendants, under 18 U.S.C. § 2724(a), knowingly disclosed Krekelberg's personal information for a purpose not permitted by the DPPA.

297.   DPS Does and Commissioner Defendants gave Individual Defendants access to the database for purposes of their intended misuse of the database.

298.   Disclosure of this database is a matter known to and participated in and directed by the DPS Does and Commissioner Defendants.

299.   To the extent the DPS Does and Commissioner Defendants delegated any part of their duties, they are still responsible for disclosure, and the persons, to whom they may have delegated, if any, are not known to Krekelberg and cannot be known by Krekelberg.

300.   DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2003.

301.   DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2004.

302.   DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2005.

303.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2006.

304.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2007.

305.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2008.

306.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2009.

307.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2010.

308.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2011.

309.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2012.

310.    DPS Does and Commissioner Defendants continue to fail to monitor the

database through regular, random, target, or user audits to assure themselves that the

ongoing disclosures were for permissible purposes in 2013.

311.   DPS and DPS Does, under the direction of Commissioner Defendants, had

the ability to determine that drivers' license information, including Krekelberg's Private

Data, was being accessed on multiple occasions, by multiple law-enforcement personnel

from multiple law-enforcement agencies.

312.   DPS and DPS Does, under the direction of the Commissioner Defendants,

had the ability to prevent unauthorized access to the DVS Database, including

unauthorized access to Krekelberg's Private Data.

313.   DPS and DPS Does, under the direction of the Commissioner Defendants,

failed to prevent unauthorized access to the DVS Database, including access to

Krekelberg's Private Data.

314.   The Commissioner Defendants and DPS Does knowingly authorized,

directed, ratified, approved, acquiesced in, committed or participated in the disclosure of

Krekelberg's Private Data.

315.   The policy of the State of Minnesota is to uphold the provisions of the law,

both state and federal, and to protect and safeguard the privacy rights of the State's

citizens and inhabitants, including its drivers' privacy rights, and including those rights as

are required to be protected by federal law.

316.   In particular, it is the policy of the State of Minnesota, as outlined in Minn.

Stat. § 171.12, subd. 7, to comply with the provisions and requirements of the DPPA.

317.   This policy is also set forth in the driver's license application and set forth

in statutory language with proper citation to that federal statute.

318.   Defendant Commissioners and DPS Does knowingly disclosed Krekelberg's and others' Private Data and violated state policy by devising and implementing a database, such as the DVS Database, that failed abysmally to uphold the privacy rights of Krekelberg and others similarly situated as protected by the DPPA.

319.   This failure exposed their information to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit.

320.   These acts and failures to act by Defendant Commissioners and DPS Does constitute knowing disclosures of Krekelberg's information within the meaning of the DPPA.

321.   Defendant Commissioners and DPS Does knowingly devised and implemented a database and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

322.   The system knowingly devised and implemented by Commissioner Defendants and DPS Does failed to set rules protecting Krekelberg's privacy rights.

323.   This system permitted, and on information and belief still permits, the accessing of the database from personal computers.

324.   This system allowed individuals to give out their personal passwords to others.

325.   This system permitted, and on information and belief may still permit, the

47

accessing of the system by persons without any accountability or even in some instances without the ability to trace the person who made the access.

326. From 2003 through 2010, this system did not require reasonably adequate training on the use of the DVS database of sworn-law enforcement officers.

327. From 2011through today, this system still does not require reasonably adequate training on the use of the DVS database of sworn-law enforcement officers.

328. The system devised and implemented by DPS, under the direction of the DPS, rendered any of their efforts at monitoring ineffective.

329. Commissioner Defendants and DPS Does have deliberately emphasized and favored the convenience of the system by users at the expense of protecting the privacy rights of the persons whose information is in the database.

330. This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to the Commissioner Defendants and the DPS Does, and was purposeful.

331. In failing to properly implement, maintain, and monitor the DVS Database, Commissioner Defendants failed to follow Minnesota state policy.

332. Many viable methods were and are available to prevent this illegal accessing of private information.

333. Upon information and belief, the Commissioners and DPS Does actually knew that law-enforcement officers were accessing the databases for impermissible purposes.

334. Upon information and belief, the Commissioners and DPS Does actually

knew that law-enforcement officers were viewing Krekelberg's Private Data without a legitimate and permissible purpose.

335.    Upon information and belief, the Commissioners and DPS Does acquiesced, facilitated, approved, or simply ignored the improper conduct by governmental personnel.

336.    Even if the Commissioners and DPS Does had no actual knowledge of the impermissible uses of the databases they oversaw, upon information and belief, they were reckless in their supervision of their subordinates who did operate the database.

337.    Upon information and belief, the Commissioners and DPS Does were negligent in supervising their subordinates who operated the databases.

338.    The information contained in the DPS database is far greater and contains more private personal information than is customarily known to non-law enforcement personnel.

339.    The information contained in the DPS database includes the social security numbers of the drivers.

340.    The information contained in the DPS database includes drivers' health information.

341.    These accesses are committed surreptitiously, and without the knowledge of the victims, including Krekelberg, which knowledge is kept hidden and concealed from the victims, including Krekelberg.

342.    There has not been a single instance of which Krekelberg is aware involving her or anyone else where an officer has informed her that he or she has accessed her information.

343.    Law-enforcement officers have gone to great lengths to avoid letting Krekelberg know they have accessed her personal private information.

344.    The surreptitious, concealed, and hidden accesses are kept secret from the general public and from the victims, including Krekelberg.

345.    Paradoxically, the practice of impermissibly viewing drivers' private information on the DVS Database and BCA Database is well known throughout the law-enforcement community, from top ranking officers to the lowest ranking personnel.

346.    Commissioner Defendants and DPS Does allowed multiple breaches of the security of Krekelberg's Private Data in violation of Minn. Stat. 13.055.

347.    Commissioner Defendants and DPS Does failed to disclose to Krekelberg this breach of the security of the data in violation of Minn. Stat. 13.055.

348.    Accessing the DVS Database without a permissible reason is a breach of confidentiality.

349.    Krekelberg contacted DPS to inquire whether law enforcement officers had been viewing her private information.

350.    Plaintiff requested an audit from Kim Jacobson at DPS.

351.    The Minnesota Department of Motor Vehicles is a division of DPS.

352.    On May 1, 2013, Jacobson provided the results of the audit to Krekelberg.

353.    This audit request and the results furnished, were for name look-ups only and specifically did not include any license plate or driver's license number look-ups.

354.    Krekelberg was shocked and disgusted to learn from DPS that it had determined that officers and personnel from over forty different departments and agencies

had reviewed, and impermissibly obtained or used, her Private Data approximately 987 times since 2003. *See* Exhibit A.

355.    Before receiving the audit report, Krekelberg had no knowledge that her Private Data had been accessed through the DVS Database.

356.    The only reason anyone, including any law-enforcement officer would have looked up Plaintiff's name is that he or she would be curious about her, either because Plaintiff is a woman, because Plaintiff is well-known in the law-enforcement community, because she was publicly named Officer of the Year, because of Plaintiff's physically attractiveness, because Plaintiff is interesting to law-enforcement officers, or for other personal reasons.

357.    Plaintiff was not under any criminal investigation; she had committed no crimes; she was not seeking the assistance of law-enforcement; she was not of any legitimate interest to law enforcement other than for personal reasons, such as curiosity or romantic attraction.

358.    There is no law-enforcement function that would have made invading Plaintiff's privacy permissible under the DPPA.

359.    Before filing suit, Plaintiff (through her attorneys) contacted the Entity Defendants, providing the relevant portion of the audit, sending them a letter in which she requested the Entity to provide her with any permissible reason it or its employees, agents, and officers had in looking up her information.

360.    Krekelberg believes that even more unauthorized accesses and viewings will occur in the future if the policies of Entity Defendants and other police departments

and law-enforcement agencies similarly situated are not changed to bring the actual

custom and practice of these Entity Defendants and others similarly situated into

compliance with their own written rules, with the rules of the Department of Public

Safety, and with federal law, including the DPPA.

361.   Included in the audit is the listing of various law-enforcement agencies with

the Defendant Entities that obtained Krekelberg's Private Data.

362.   According to DPS, Individual Defendants used Krekelberg's name, not her

license plate numbers, to look up her private, personal information.

363.   There was no valid law-enforcement related reason that any law-

enforcement officer would have looked up the Plaintiff by name.

364.    Individual Defendants' identities (John and Jane Does) are not presently

known, and will not be revealed by DPS or the Entity Defendants be revealed pursuant to

the Minnesota Government Data Practices Act.  Krekelberg anticipates that these yet-to-

be-named Individual Defendants will become known through discovery.

365.   Supervisor Defendants are not presently known.  Krekelberg anticipates

that the yet-to-be-named Supervisor Defendants who should have monitored, prevented

and stopped the unauthorized accesses to Krekelberg's information will become known

through discovery.

366.   The remaining Entity Defendant identities (Entity Does) are not presently

known, because not all of the entities identified by the DPS have provided sufficient

information to determine if their personnel's access to the database was unauthorized.

Krekelberg anticipates that these yet-to-be-named Entity Defendants will become known

through discovery.

367.    Defendant Commissioners released and disclosed this information without training or with wholly inadequate training for the individuals with access to the DVS database.

368.    Defendants Commissioners released and disclosed Krekelberg's Private Data to individuals without ascertaining whether it was obtained for a purpose permitted under the DPPA, but instead relied on the status of the person obtaining it, assuming that because of the person's status their obtainment of the information was for a purpose permitted by the DPPA.

369.    None of the obtainments of Krekelberg's information were for a purpose permitted by the DPPA.

370.    Whatever training, monitoring, or inquiry into the officers' usage of the information systems has been adopted is woefully inadequate to ensure that access is used properly and lawfully.

371.    On information and belief, despite this training, Defendant Entities and Defendant Supervisors, allowed their employees, including but not limited to Individual Defendants, to view Krekelberg's Private Data for unlawful purposes.

372.    On information and belief, Defendant Entities, Defendant Supervisors, and Commissioner Defendants permitted, condoned, or acquiesced in this illegal access to Krekelberg's private information, and knew or should have known that it was occurring.

373.    On information and belief, this illegal access occurs with regularity not only of Krekelberg's private information, but of other Minnesota drivers' private

information.

374.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does have lax policies or lax enforcement of these policies that allow for these intrusions.

375.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

376.    The Driver's License application assures Minnesota drivers their information will be safeguarded and kept private, "DPS releases this information to local, state, and federal government agencies only as authorized or required by state and federal law."

377.    The failure of Defendant Entities and Defendant Supervisors to keep this information private is a flagrant breach of a promise of confidentiality.

378.    Defendant Entities, Defendant Supervisors, Commissioner Defendants, and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

379.    The extent of this illegal access is widespread and pervasive throughout departments, and is a custom and practice.

380.    The widespread practice is demonstrated by the systematic tolerance of illegal accesses.

381.    Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about

the illegal access into previous cases involving this same breach of privacy as saying that "every single cop in the state has done this.  Chiefs on down."

382.    Further evidence is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that "[y]ou used to look up people without a second thought.  You'd look up old friends from high school or just someone you used to know."

383.    Each individual with access to the DPS Database has a password allowing that individual access to the DPS Database.

384.    Personnel can access the DPS Databases from any computer with internet access.

385.    Personnel occasionally gave other individuals their passwords, contrary to requirements.

386.    The system for accessing accountability and responsibility was and is prone to error and fails to reasonably protect drivers' private information.

387.    On further information and belief, this illegal access of Private Data occurs disproportionately to women.

388.    When Defendant personnel viewed Krekelberg's private information, they did not do so to carry out official police functions.

389.    Krekelberg committed no crimes or transgressions that would explain or legitimize the unauthorized access of their Private Data.

390.    The Individual Defendants obtained Krekelberg's personal information without probable cause or reasonable suspicion to believe that Krekelberg had engaged in

any criminal activity or any activity even remotely related to criminal activity.

391.    Krekelberg never waived the protections of the DPPA.

392.    Defendants' actions have violated the United States Constitution, the DPPA, 42 U.S.C. § 1983, and Minnesota State law.

393.    The sheer volume of the intrusions into her private life demonstrates that law-enforcement personnel, public employees, and others are unfairly hostile and careless toward Krekelberg's privacy and safety.

394.    As a result of these invasions of privacy, Krekelberg has suffered and continues to suffer emotional distress.

**THE COMMISSIONERS HAVE KNOWN ABOUT THESE VIOLATIONS**

395.    DPS Commissioners Campion and Dohman have been involved with law enforcement for many years.

396.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

397.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; and prior to that time, she was a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

398.    Dohman also served as president of the Minnesota Chiefs of Police Association.

399.    Upon information and belief, the misuse of private information is the main

complaint of most police chiefs and human resources personnel.

400.    Former Commissioner Michael Campion served from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the BCA, which also maintains a driver's license database.

401.    Prior to that position, Campion was a special agent at the BCA.

402.    It was during his tenure that the DPS database was largely developed in its current format.

403.    On information and belief, misuse of the DPS database has been well-known to Commissioner Defendants.  At a Legislative Audit Subcommittee hearing in February 2013, at which Commissioner Dohman testified, the testimony of the Legislative Auditor revealed that at least 50% of law enforcement officers are misusing the DPS database by obtaining, disclosing, and/or using the driver license personal information for an impermissible purpose.

404.    On information and belief, Commissioner Defendants knew this, and knowingly disclosed the information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.

405.    Experts in the field of police training report that the primary complaint of many police departments is that law enforcement personnel misuse private information.  This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

**THE COMMISSIONER DEFENDANTS AND DPS DOES REASONABLY COULD HAVE DONE SIGNIFICANTLY MORE TO PROTECT KREKELBERG'S PRIVACY.**

406.    On information and belief, the only changes and improvements to the DPS system to increase the protection of privacy, especially from law enforcement, have occurred only after litigation involving the DPS, specifically the lawsuit titled Anne Marie Rasmusson v. City of Bloomington, No. 12-CV-00632 (SRN/JSM).  In that case Plaintiff sued, among others, the Commissioners of the DPS and was able to obtain through settlement significant changes to the DVS database, including numerous protections such as different types of periodic audits.  On information and belief, the 19,000 improper accesses of former Department of Natural Resources Captain John Hunt were discovered in part due to those changes.  The vast majority of the restrictions and protections on driver privacy have occurred due to the Rasmusson case and others like it. The Commissioners in Minnesota remains highly resistant to improving the DPS database, instead looking to the individual officers and local governments to institute changes, which is a far less effective method of instituting changes and will result in piecemeal and inadequate changes in protections at best.

407.    On information and belief, states other than Minnesota have far greater restrictions and protections in place to protect the data on their drivers' license databases from being obtained, disclosed or used for a reason not permitted by the DPPA.

408.    For instance, on further information and belief, North Dakota requires a daily report of anyone who obtains driver photos and its system generates weekly reports listing all individuals with accesses of over 25 images a day.  These reports are sent to the

North Dakota Attorney General to make inquiries as to whether the information was

obtained for a job-related reason.   North Dakota also requires the users of the database to

declare the reason why they were looking at the record.   North Dakota also requires its

users to take a certification test before being given access to the database.

409.    Also on information and belief, the State of California's DMV cooperates

with its law-enforcement agencies and California's Department of Justice to ensure

access to its drivers' license information is limited to agencies that satisfy specific

requirements before they are issued a confidential requester code that permits access to

law-enforcement information only.   Each law-enforcement agency is responsible for

limiting access to necessary personnel.   California also periodically reviews law-

enforcement applications to ensure the agency and person requesting the information is

still entitled to obtain the information.   During a recent audit, California's DMV reviewed

questionable agencies and even reclassified some to prevent them from having further

access to the database.

410.    On further information and belief, the California DMV has a dedicated law-

enforcement unit to analyze data inquiries.   Each data request is logged and technicians

are trained to look for developing patterns in the requester's history.   The California

DMV also conducts periodic historical reviews of a specific agency's requests to

determine if the accesses were authorized.   The California DMV may also require a law-

enforcement entity to supply an explanation of events, describe their protocols for

accessing DMV information, what policies or access requirements were violated, what

corrective or administrative steps are being taken to admonish the officer, and what steps

the agency is taking to avoid future occurrences.  All users annually complete an

information security form.  Finally, the California DMV is very restrictive on the types of

information it releases.

411.    On information and belief, DPS Commissioners, DPS and Defendants

Entities knew or should have known of the policies and practices of other States, but did

not at the time that Krekelberg's drivers' license information was being impermissibly

obtained, require any of the protections and safeguards to the Minnesota DPS Databases

utilized by other states.

412.    Given that other states do and did have safeguards and protections in place

to protect their drivers' private information from impermissible accessing, use, and

disclosure, DPS Commissioners, DPS and Defendants Entities reasonably should have

implemented such safeguards and protections for Minnesota drivers, including

Krekelberg.

413.    The implementation of some or all of these safeguards and protections by

Defendants would have prevented many of the impermissible obtainment, uses and

disclosures of Krekelberg's private data.

## COUNT I: VIOLATION OF THE DPPA, 18 U.S.C. § 2721, *et seq.*

*(Against all Defendants)*

414.    Krekelberg reaffirms and realleges the allegations in Paragraphs 1 through

413.

415.    Krekelberg provided personal information to the DPS including her address,

color photograph, date of birth, weight, height, eye color, social security number and

medical information for the purpose of acquiring and utilizing a State of Minnesota driver's license.

416.   The DPS Database also maintained Krekelberg's driving record.

417.   Krekelberg did not provide her consent for any of Defendant Individuals to obtain, disclose or use, or for any of Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, her private information for anything but official law-enforcement business.

418.   Knowingly obtaining, disclosing or using Private Data for a purpose not permitted by the DPPA is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

419.   The DPPA provides redress for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

420.   Minnesota law is to enforce and follow the DPPA and to hold all information obtained pursuant to an application for a driver's license confidential and private; even prior to the passage of the DPPA in 1994 Minnesota law pledged to hold all this information private and confidential, and on one's driver's license application these promises of confidentiality are all made; Defendants' actions in accessing this information is a flagrant breach of that pledge of confidentiality.

421.   Each of the Defendants invaded Krekelberg's legally protected interest under the DPPA.

422.   According to the Department of Vehicle Services, the Individual Defendants knowingly obtained, disclosed or used Krekelberg's personal information,

from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. §
2724(a).

423.    None of the Individual Defendants' activities fell within the DPPA's
permitted exceptions for procurement of Krekelberg's private information.

424.    By the actions described above, each Defendant Individual was acting
within the scope of his or her employment when he or she obtained, disclosed or used
Krekelberg's personal information from the DPS Databases for a purpose not permitted
by the DPPA.

425.    Individual Defendants knew that their actions related to Krekelberg's
Private Data were in violation of the DPPA.

426.    Defendant Entities and Defendant Supervisors knowingly authorized,
directed, ratified, approved, acquiesced in, committed or participated in obtaining,
disclosing or using of Krekelberg's private personal information by Individual
Defendants.

427.    Defendant Commissioners, Defendant Entities and Defendant Supervisors'
actions constitute a knowing disclosure of the personal information of Krekelberg under
the DPPA.

428.    Individual Defendants knowingly used Defendant Entities' computers,
passwords and passcodes to obtain Krekelberg's private information.

429.    Krekelberg's private information was obtained by each Individual
Defendant for purposes that are not permitted under the DPPA.

430.    Defendant Entities are each vicariously liable for the acts of Defendant

Individuals.

431.    By the actions complained of, Commissioner Defendants, and DPS Does are jointly liable for the acts of Defendant Individuals.

432.    Krekelberg has suffered harm because her private information has been obtained and viewed unlawfully.

433.    Krekelberg has further suffered harm because her private information has been obtained unlawfully.  Krekelberg suffered and continues to suffer harm by virtue of the increased risk that her protected information is in the possession of Individual Defendants who obtained it without a legitimate purpose.

434.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

435.    Individual Defendants, Supervisor Defendants, and Commissioner Defendants each willfully and recklessly disregarded the law, entitling Krekelberg to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20. Krekelberg is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

436.    In addition, under the DPPA, Krekelberg is entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1). Krekelberg need not prove actual damages to receive said liquidated damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983

*(Against All Individual Defendants Including Jane and John Does)*

437.    Krekelberg reaffirms and realleges the allegations in Paragraphs 1 through 436.

438.    The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

439.    The Fourteenth Amendment provides all individuals in the United States with a substantive due process right of privacy.

440.    The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

441.    At no time did Krekelberg behave in a manner that would provide any legal justification for the above-described invasion of her privacy.

442.    The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment as well as a violation of their substantive due process right to privacy under the Fourteenth Amendment.

443.    The DPPA, among other things, such as the plain language of the Constitution, the various court decisions interpreting the Constitution and the traditions of our country establish that an individual has a reasonable expectation of privacy in their driver's license information.

444.    Individual Defendants' viewing of Krekelberg's personal information was

64

unauthorized, unjustified, and excessive, and violates the Fourth and Fourteenth Amendments, the laws of the United States and the laws of the State of Minnesota.

445.    By the actions described above, each Individual Defendant, acting under color of state and federal law, violated and deprived Krekelberg of her Fourth and Fourteenth Amendment Rights.

446.    Individual Defendants used the Entity Defendants' computers, passwords and passcodes to obtain Krekelberg's Private Data.

447.    The acts of each Individual Defendant, acting under the color of state law, constituted an invasion or repeated invasions of Krekelberg's clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

448.    The DPPA protects and codifies an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Krekelberg's information.

449.    Each individual law-enforcement and other government personnel, acting under color of state law, knew that his or her actions violated and deprived Krekelberg of her clearly established statutory rights under the DPPA.

450.    Each Individual Defendant deprived Krekelberg of her federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Krekelberg's rights would be violated by his or her actions.

451.    Each Individual Defendant was deliberately indifferent to Krekelberg's

statutory and civil right to be free from illegal searches, invasions of privacy and the

unauthorized accessing of their Private Data.

452.    As a direct and proximate result of the acts and omissions of the above-

named Individual Defendants, Krekelberg was damaged in an amount yet to determined,

but in excess of $75,000.

453.    Punitive damages are available against Individual Defendants for their

reckless and callous disregard for Krekelberg's rights and their intentional violations of

the federal law, and are hereby claimed as a matter of federal common law, Smith v.

Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for

punitive damages set forth in Minn. Stat. § 549.20.

454.    Krekelberg is entitled to recovery of their costs, including reasonable

attorney fees, under 42 U.S.C. § 1988.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983

*(Against Entity Defendants and Supervisor Defendants, including John, Jane and Entity
Does, for violation of 42 U.S.C. § 1983)*

455.    Krekelberg reaffirms and realleges the allegations in Paragraphs 1 through

Paragraph 454.

456.    Individual Defendants' numerous accesses of Krekelberg's private

information are not unique, but one example of how frequently such law-enforcement

agencies and other governmental entities customarily violate the DPPA by accessing

Private Data of persons without having any legitimate or permissible reason for doing so.

457.    Persons familiar with police departments and those involved in teaching

supervisors how to train and hold accountable their subordinate law-enforcement personnel have been told by those supervisors that the unlawful and impermissible accessing of private information is among the most frequently committed wrongs by police, for which they are seldom if ever held accountable.

458.    Improper access of citizens' Private Data by Defendants for their own personal and private uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to Defendant Supervisors and Commissioner Defendants.

459.    These customs and practices by Defendant Individuals are at variance with the written rules set down by the Entity Defendants, the DPS, and Commissioner Defendants, but these formal rules are widely and knowingly disregarded.

460.    Given Entity Defendants' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

461.    Defendant Entities and Defendant Supervisors of the law-enforcement personnel and other public employees accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel and other public employees.

462.    The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the

Entity Defendants.

463.    These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiffs, whose information has been wrongfully accessed.

464.    Defendant Entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

465.    Supervisor Defendants, up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity.

466.    Defendants' liability is due to their actual and constructive knowledge of this practice.

467.    Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

468.    Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Krekelberg, whose information has been and continues to be wrongfully accessed.

469.    In addition, Defendant Supervisors of the law-enforcement personnel and other public employees, up to and including the chief police officer in each of Defendant Entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the Private Data of citizens, including Krekelberg, without a proper, lawful, permissible, justifiable purpose for doing so.

470.    This pattern of failure to train, monitor, supervise, and discipline

68

demonstrates the state of mind of these Defendant Supervisors and a deliberate
indifference to the rights of the citizens and others whose information has been so widely
accessed, including Krekelberg.

471.    The federal rights of the citizens, including Krekelberg, whose information
was improperly accessed, are held in light regard by many if not most of the Defendant
Supervisors and by the Defendant Entities themselves.

472.    Defendants' lack of concern evidences their deliberate indifference both to
the problem of the unauthorized access and to the impact of the unauthorized access on
the federal rights of the citizens, including Krekelberg, who would often be unaware of
that access.

473.    It is yet unknown whether a system has been established by the Entity
Defendants and Supervisor Defendants to monitor the regular access of the DPS
Databases by personnel.

474.    It is yet unknown whether any attempt has been made by Entity Defendants
and Supervisor Defendants to provide redress and assurance to the persons, including
Krekelberg, whose DVS information has been wrongfully accessed by the Individual
Defendants named in this Complaint, or by other personnel in the municipalities named
in this Complaint.

475.    As a direct and proximate result of the acts and omissions of the above-
named Defendant Entities and Defendant Supervisors, Krekelberg has endured and
continues to endure mental suffering, and has been damaged in an amount yet to be
determined and of a continuing nature, but in an amount in excess of $75,000.

476.     Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Krekelberg's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

477.     Krekelberg is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983

*(Against Commissioner Defendants and DPS Does)*

478.     Krekelberg reaffirms and realleges the allegations in Paragraphs 1 through 477.

479.     As DPS Commissioners, Campion and Dohman, along DPS Does, were and are responsible for creating, maintaining, and providing access to the database that included Krekelberg's Private Data.

480.     Defendant Commissioners and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Krekelberg's Private Data, and have the ongoing duty to prevent such unauthorized accesses.

481.     Defendant Commissioners and DPS Does failed to utilize any due care to ensure that the disclosed information was being used only for permissible purposes.

482.     Commissioner Defendants and DPS Does failed to prevent unauthorized access to the database, including Krekelberg's Private Data.

483.    The actions of Commissioner Defendants and DPS Does, as alleged, violate the rights of Krekelberg under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

484.    On information and belief, Commissioner Defendants, and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

485.    From 2003, Commissioner Defendants and DPS Does allowed unauthorized access of Krekelberg's Private Data such hundreds of personnel from accessed Krekelberg's information about 994 times.

486.    On information and belief, Commissioner Defendants' and DPS Does' efforts have been insufficient to prevent future unauthorized access of Krekelberg's and other individuals' private, personal information.

487.    Commissioner Defendants and DPS Does have sanctioned the constitutional violations by the Individual Defendants through their failure to remedy the policy, custom and practice of officers' and employees' unfettered and unauthorized access to the database.

488.    Commissioner Defendants and DPS Does have been negligent in supervising subordinates responsible for implementing a law-enforcement database that prevents unauthorized access to private, personal information.

489.    On information and belief, Commissioner Defendants and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

71

490.    Commissioner Defendants and DPS Does, acting under the color of state law, were deliberately indifferent to Krekelberg's constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of her Private Data.

491.    Commissioner Defendants and DPS Does failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with drivers' licenses.

492.    Commissioner Defendants and DPS Does are jointly liable for the use, disclosure, or access of Krekelberg's Private Data for each Individual Defendants' access.

493.    As a direct and proximate result of the acts and omissions of Commissioner Defendants and DPS Does, Krekelberg was forced to endure physical and mental suffering, and was thereby damaged in an amount yet to determined, but in an amount in excess of $75,000.

494.    Punitive damages are available against Commissioner Defendants and DPS Does for their reckless and callous disregard for Krekelberg's' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

495.    Krekelberg is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: COMMON LAW INVASION OF PRIVACY

*(Against All Defendants)*

496.    Krekelberg reaffirms and realleges the allegations in Paragraphs 1 through 495.

497.    By improperly obtaining Krekelberg's private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of Krekelberg's private affairs and concerns.

498.    Defendants' intrusions would be highly offensive to a reasonable person.

499.    Defendants' intrusions caused Krekelberg to suffer severe emotional distress and physical harm.

500.    Defendants' intrusions were intended to cause Krekelberg to suffer severe emotional distress and physical harm, and was made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

501.    Krekelberg is entitled to tort damages for Defendants' invasion of privacy.

### JURY DEMAND

502.    Krekelberg demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Amy Elizabeth Krekelberg prays for judgment against the Defendants as follows:

1.      A money judgment against all Defendants for liquidated, actual and compensatory damages in an amount in excess of seventy five thousand ($75,000) dollars and punitive damages in an amount to be determined by the jury, together with their costs,

including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2.     Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3.     Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4.     An injunction, permanently enjoining all Defendants from viewing Krekelberg's private information in violation of the DPPA, unless necessary for law enforcement purposes;

5.     An injunction, permanently and prospectively requiring Defendants to establish and implement all effective monitoring and investigative procedures to end this practice, discover and suspend permanently all accessing privileges to the violators; and to provide full disclosure to all potential claimants of the entities and persons who have violated their rights under the DPPA and the Constitution; and,

6.     For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**

Dated:  December 17, 2013                       s/ Kenn H. Fukuda
                                               Jonathan A. Strauss (#0279602)
                                               Lorenz F. Fett (#196769)
                                               Sonia Miller-Van Oort (#278087)
                                               Kenn H. Fukuda (#0389301)
                                               Mark H. Zitzewitz (#289073)
                                               12 South Sixth Street, Suite 1242
                                               Minneapolis, MN  55402

(612) 756-7100, Fax: 612-756-7101
jons@sapientialaw.com larryf@sapientia
law.com
soniamv@sapientialaw.com
kennf@sapientialaw.com
markz@sapientialaw.com

and

**SIEBEN GROSE VON HOLTUM &
CAREY**

s/Susan M. Holden
Susan M. Holden (#0189844)
Jeffrey M. Montpetit (#0291249)
901 Marquette Avenue,
Suite 500,
Minneapolis, MN 55402
(612) 333-4500

**ATTORNEY FOR PLAINTIFF
AMY ELIZABETH KREKELBERG**