# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Amy Elizabeth Krekelberg,

Civil No. 13-3562 (DWF/SER)

Plaintiff,

v.

**MEMORANDUM**
**OPINION AND ORDER**

Anoka County; City of Anoka; City of
Apple Valley; City of Becker; City of
Blaine; City of Bloomington; City of
Brooklyn Center; Carver County; City of
Coon Rapids; City of Deephaven; City of
Edina; City of Elk River; City of Glencoe;
City of Fridley; City of Hastings; Hennepin
County; City of Jordan; City of Columbia
Heights; City of Lakeville; City of Maple
Grove; City of Maplewood; City of
Medina; Metropolitan Council; Mille Lacs
County; City of Minneapolis; City of
Minnetonka; City of Mounds View;
Minneapolis Park & Recreation Board; City
of New Brighton; City of Plymouth; Ramsey
County; City of Ramsey; City of Richfield;
City of Roseville; Sherburne County; City
of St. Anthony; City of St. Francis; City of
St. Joseph; City of St. Paul; City of
Stillwater; City of Woodbury; Wright
County; Three Rivers Park District; Michael
Campion, in his individual capacity as the
Commissioner of the Department of Public
Safety; Ramona Dohman, in her individual
capacity as the Commissioner of the
Department of Public Safety; Department of
Public Safety Does (1-30), acting in their
individual capacity as officers, supervisors,
staff, employees, independent contractors or
agents of the Minnesota Department of
Public Safety; John and Jane Does (1-1000),
acting in their individual capacity as
supervisors, officers, deputies, staff,
investigators, employees or agents of the

other governmental agencies; and Entity
Does (1-50), including cities, counties,
municipalities, and other entities sited in
Minnesota,

Defendants.

---

Jeffrey M. Montpetit, Esq., and Susan M. Holden, Esq., Sieben Gross Von Holtum &
Carey, Ltd.; and Lorenz F. Fett, Jr., Esq., Sonia L. Miller-Van Oort, Esq., Jonathan A.
Strauss, Esq., and Mark H. Zitzewitz, Esq., Sapentia Law Group PLLC, counsel for
Plaintiff.

Bryan D. Frantz, Assistant County Attorney, Anoka County Attorney's Office, counsel
for Defendant Anoka County.

Brian Scott Carter and C. Lynne Fundingsland, Assistant City Attorneys, Minneapolis
City Attorney's Office, counsel for Defendant City of Minneapolis.

Jon K. Iverson, Esq., Stephanie A. Angolkar, Esq., and Susan M. Tindal, Esq., Iverson
Reuvers Condon, counsel for Defendants City of Anoka, City of Apple Valley, City of
Becker, City of Blaine, City of Bloomington, City of Brooklyn Center, City of Coon
Rapids, City of Deephaven, City of Elk River, City of Glencoe, City of Fridley, City of
Hastings, City of Jordan, City of Columbia Heights, City of Lakeville, City of Maple
Grove, City of Maplewood, City of Medina, City of Minnetonka, City of Moundsview,
City of New Brighton, City of Plymouth, City of Ramsey, City of Richfield, City of
Roseville, City of St. Anthony, City of St. Francis, City of St. Joseph, City of Stillwater,
and City of Woodbury.

Mark P. Hodkinson, Esq., Bassford Remele, PA, counsel for Defendant City of Edina.

Erin E. Benson, Esq., Margaret A. Skelton, Esq., and Timothy A. Sullivan, Esq., Ratwik
Roszak & Maloney, counsel for Defendants Carver County, Mille Lacs County,
Sherburne County, Wright County, and Three Rivers Park District.

Toni A. Beitz, Beth A. Stack, and Daniel D. Kaczor, Assistant County Attorneys,
Hennepin County Attorney's Office, counsel for Defendant Hennepin County.

Daniel L. Abelson, Esq., Metropolitan Council, counsel for Defendant Metropolitan
Council.

Ann E. Walther, Esq., and Daniel A. Louismet, Esq., Rice, Michels & Walther LLC, counsel for Defendant Minneapolis Park & Recreation Board.

Kimberly R. Parker, and Robert B. Roche, Assistant County Attorneys, Ramsey County Attorney's Office, counsel for Defendant Ramsey County.

Judith A Hanson, Assistant City Attorney, St. Paul City Attorney's Office, counsel for Defendant City of St. Paul.

Oliver J. Larson, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants Michael Campion and Ramona Dohman.

---

# INTRODUCTION

This matter is before the Court on the following motions:  (1) Defendant Anoka County's Motion to Dismiss or to Sever (Doc. No. 27); (2) Defendants Carver County, Mille Lacs County, Sherburne County, Wright County, and Three Rivers Park District's (collectively, "County and Three Rivers Defendants") Motion to Dismiss or to Sever (Doc. No. 32); (3) Defendants City of Anoka, City of Apple Valley, City of Becker, City of Blaine, City of Bloomington, City of Brooklyn Center, City of Coon Rapids, City of Deephaven, City of Elk River, City of Glencoe, City of Fridley, City of Hastings, City of Jordan, City of Columbia Heights, City of Lakeville, City of Maple Grove, City of Maplewood, City of Medina, City of Minnetonka, City of Moundsview, City of New Brighton, City of Plymouth, City of Ramsey, City of Richfield, City of Roseville, City of St. Anthony, City of St. Francis, City of St. Joseph, City of Stillwater, and City of Woodbury's (together, "City Defendants") Motion to Dismiss or to Sever (Doc. No. 37); (4) Defendant City of St. Paul's Motion to Dismiss or Sever (Doc. No. 44); (5) Defendant Metropolitan Council's ("Met Council") Motion to Dismiss or Sever (Doc. No. 48);

(6) Defendant City of Minneapolis' Motion to Dismiss or to Sever (Doc. No. 54);

(7) Defendant Ramsey County's Motion to Dismiss or to Sever (Doc. No. 57);

(8) Defendant Hennepin County's Motion to Dismiss or to Sever (Doc. No. 62);

(9) Defendant City of Edina's Motion to Dismiss or to Sever (Doc. No. 66); (10) Michael Campion and Ramona Dohman's (together, "Commissioners") Motion to Dismiss (Doc. No. 73); and (11) Defendant Minneapolis Park & Recreation Board's ("Park & Rec") Motion to Dismiss or to Sever (Doc. No. 107).  For the reasons set forth below, the Court grants in part and denies in part the motions to dismiss.

## BACKGROUND

This case relates to the alleged unlawful access of Plaintiff Amy Elizabeth Krekelberg's ("Krekelberg" or "Plaintiff") information contained in the Department of Vehicle Services' ("DVS")[1] motor-vehicle records database for Minnesota Drivers (the "Database").  Plaintiff alleges that personnel from various government entities accessed her information in the Database, which includes individuals' "names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota."  (Doc. No. 1, Compl. ¶ 86.)  Many of the allegations in this case are identical to the allegations made in the numerous and substantially similar cases

---

[1]     DVS is a division of the Minnesota Department of Public Safety ("DPS"). (Compl. ¶ 351.)

previously filed in this District[2] and are very familiar to the Court.  *See, e.g.*, *Mallak v. Aitkin Cnty.*, Civ. No. 13-2119, 2014 WL 1285807, at *1-3, 14-16 (D. Minn. Mar. 31, 2013) (describing plaintiff's allegations relating to the actions by the various government entities and the Commissioner defendants, and also describing the background and framework of the Driver's Privacy Protection Act ("DPPA")).  Therefore, here, the Court need not restate all of Plaintiff's allegations and, instead, will focus on those alleged facts that are unique to this case.

Krekelberg alleges that she has held the following positions in the Twin Cities area:  (1) from 2004 to 2007, Krekelberg worked in security and loss prevention for the cities of Roseville, Minneapolis, St. Paul, Blaine, Maple Grove, Maplewood, Apple Valley, Woodbury, and Bloomington; (2) from 2005 to 2008, Krekelberg worked for Park & Rec[3] as a Park Agent for the Minneapolis Park Police Department; (3) from 2008 to 2012, Krekelberg worked as a Park Police Officer for the Minneapolis Park Police Department; and (4) in 2012, Krekelberg joined the Minneapolis Police Department.  (Compl. ¶¶ 66, 68-70, 79.)  Plaintiff also alleges that in 2010, Minneapolis Park Police Department Chief Linda Bergstrom presented Krekelberg with the Officer of the Year Award.  (*Id.* ¶¶ 76-77.)

---

[2]     *See, e.g.*, *Sherno v. Anoka Cnty.*, Civ. No. 14-982, 2014 WL 4670926, at *1 (D. Minn. Sept. 19, 2014) (citing *Roschen v. Wabasha Cnty.*, Civ. No. 13-2490, 2014 WL 3105032, at *2 n.4 (D. Minn. June 26, 2014) (counting twenty-eight such cases in this District)).

[3]     The Minneapolis Park Police Department is operated by Park & Rec.  (Compl. ¶ 71.)

Krekelberg alleges that in 2009 she began dating, and eventually married, a police officer who had previously been her police trainer.  (*Id.* ¶ 72.)

Krekelberg makes a number of allegations relating to law enforcement's interest in her because of her roles detailed above.  First, she alleges that her dating relationship with her now husband led to "an incredible amount of gossip and recrimination . . . [and] rumors."  (*Id.*)  Specifically, Krekelberg makes a number of allegations relating to questions about her address and who she was dating.  (*Id.* ¶¶ 72-73.)  Krekelberg alleges she was frequently asked on dates and propositioned by numerous officers and they were reprimanded for that behavior.  (*Id.* ¶¶ 74-75.)  She alleges that she experienced a number of inappropriate sexual advances by law enforcement members.  (*Id.* ¶ 75.)  Krekelberg further alleges that the unwanted attention described above increased after her Officer of the Year Award in 2010.  (*Id.* ¶ 78.)  Krekelberg also points to occasions where officers asked her full name and alleges that data requests and lookups frequently corresponded to those requests.  (*Id.* ¶¶ 80-81.)  In her loss prevention duties, Krekelberg alleges that she had frequent contact with law enforcement personnel.  (*Id.* ¶ 67.)

Plaintiff sought an audit report associated with her driver's license records from DVS in 2013 and received the audit results on May 1, 2013.  (*Id.* ¶¶ 350, 352.)  Plaintiff alleges that the audit report shows that Krekelberg's records had been accessed approximately 987 times.[4]  (*See id.* ¶ 354, Ex. A.)  Krekelberg alleges that these lookups were made by "officers and personnel from over forty different departments and

---

[4]     Plaintiff also alleges that she specifically excluded lookups that may be associated with her three traffic violations from this lawsuit.  (Compl. ¶¶ 209, 283.)

agencies." (*Id.* ¶ 354.)  The audit reflects that each access was made by searches using

Krekelberg's name, not her license plate number.  (*Id.* ¶ 362.)  Plaintiff asserts that she

never provided consent for access to her records and never waived consent.  (*Id.* ¶¶ 391,

417.)  Plaintiff also alleges that she has never been investigated by the entities listed

above and has not committed any crimes that would authorize access to her personal data.

(*See, e.g.*, *id.* ¶¶ 104, 108, 389.)  Krekelberg further alleges that she has served honorably

as a police officer and has never been disciplined.  (*Id.* ¶ 82.)

As with other similar cases, Plaintiff alleges that "none of the officers obtained,

used or disclosed her information for a purpose permitted under the DPPA."  (*Id.* ¶ 83.)

Finally, Krekelberg asserts that:

> [A]ll the above events and circumstances, particularly Krekelberg's relative
> youth, her gender, her physical attractiveness, her having dated and married
> a police officer, her entry into a male-dominated profession, and her great
> success at that profession, and resultant jealousy, curiosity, sexual interest,
> and other human emotions, were the reasons and purposes why her personal
> information was obtained and used by other police officers and others so
> many times, and none of them are permissible purposes under the DPPA.

(*Id.* ¶ 84.)

In her Complaint, Plaintiff asserts the following claims:  (1) violation of the

DPPA, 18 U.S.C. § 2721, *et seq.*, against all Defendants; (2) violation of 42 U.S.C.

§ 1983 against all Individual Defendants, including Jane and John Does; (3) violation of

42 U.S.C. § 1983 against all Entity Defendants and Supervisor Defendants, including

John, Jane and Entity Does; (4) violation of 42 U.S.C. § 1983 against Commissioner

Defendants and DPS Does; and (5) common law invasion of privacy against all

Defendants.  (*Id.* ¶¶ 414-501.)

Defendants now move to dismiss based on the statute of limitations, failure to state a claim under the DPPA, failure to state a claim under § 1983, and failure to state a claim for invasion of privacy. (*See, e.g.*, Doc. Nos. 27, 32, 37.) Defendants also seek severance in the alternative. (*See id.*)

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not

8

pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Statute of Limitations

The issues raised by the parties in the present motions have been extensively discussed in connection with other DPPA cases in this District and need not be repeated here. With respect to the question of the statute of limitations in DPPA cases, the Court hereby adopts its prior reasoning in *Mallak*. *See Mallak*, 2014 WL 1285807, at *4-6. Therefore, the Court finds that with respect to Plaintiff's DPPA claims, the standard rule applies, and the Court declines to apply the discovery rule as sought by Plaintiff. *Id*. Application of the standard rule means that Plaintiff's DPPA claims are subject to a four-year statute of limitations and that the clock begins running on the date when Plaintiff's records were accessed. *See id.*

In this case, because Plaintiff filed her complaint on **December 17, 2013**, the statute of limitations bars claims regarding lookups occurring before **December 17, 2009**. As a result, Plaintiff's DPPA claims related to the following approximately 834 lookups that occurred before December 17, 2009 are time-barred and must be dismissed:

1.     DPPA claims against the following City Defendants: City of Apple Valley, City of Blaine, City of Bloomington, City of Brooklyn Center, City of Deephaven, City of Elk River, City of Glencoe, City of Fridley, City of Hastings, City of Jordan, City of Lakeville, City of Maple Grove, City of Maplewood, City of Medina, City of Minnetonka, City of Moundsview, City of Richfield, City of St. Francis, City of St. Joseph, City of Stillwater, and City of Woodbury

are dismissed in their entirety (approximately 170 lookups dismissed and 21 entities dismissed).[5]

2.  498 lookups against the City of Minneapolis are dismissed.

3.  All DPPA claims against the City of St. Paul are dismissed in their entirety (54 lookups).

4.  90 lookups against the Park & Rec are dismissed.

5.  All DPPA claims against Hennepin County are dismissed in their entirety (1 lookup).

6.  All DPPA claims against Ramsey County are dismissed in their entirety (10 lookups).

7.  All DPPA claims against the City of Edina are dismissed in their entirety (1 lookup).

8.  All DPPA claims against Met Council are dismissed in their entirety (3 lookups).

9.  All DPPA claims against all County and Three Rivers Defendants are dismissed.  Thus, claims against Carver County, Mille Lacs County, Sherburne County, Wright County, and Three Rivers Park District are dismissed in their entirety (6 lookups).

10. One lookup against Anoka County is dismissed.

(*See* Compl. Ex. A.)  In sum, all DPPA claims for data lookups done prior to

December 17, 2009, are dismissed as time-barred.  Thus, claims relating to approximately

127 lookups and against 12 entities remain.

---

[5]  Plaintiff refers to 177 lookups, but the Defendant Cities' analysis of the audit refers to 207 lookups. The Court uses Defendant Cities' analysis because it is more comprehensive, yet, the Court notes that the specific number of lookups does not alter the Court's analysis that all DPPA claims relating to lookups before December 17, 2009, are dismissed and those after that date remain.

### III.    The DPPA

In light of the Court's ruling on the statute of limitations, the remaining lookups in this case that support Plaintiff's DPPA claims are as follows:

1.      37 lookups by City of Anoka, City of Becker, City of Columbia Heights, City of Coon Rapids, City of New Brighton, City of Plymouth, City of Ramsey, City of Roseville, City of St. Anthony.

2.      77 lookups by City of Minneapolis.

3.      9 lookups by Park & Rec.

4.      4 lookups by Anoka County.

(*See* Compl. Ex. A.)

With respect to these remaining DPPA claims, the Court further incorporates its holdings and analysis in *Mallak* as they relate to DPPA claims.  *See Mallak*, 2014 WL 1285807, at *6-9.  Generally, to be liable under the DPPA, a defendant must knowingly obtain, disclose, or use personal information for a purpose other than one of the permissible purposes listed under Section 2721(b).  *See* 18 U.S.C. § 2724 (a); *Mallak*, 2014 WL 1285807, at *6.  In *Mallak*, this Court held that whether an individual "obtained" information involves a fact-specific analysis, but need not necessarily include physical possession, and that to state a claim under the DPPA, a plaintiff must allege that the information was obtained "for a purpose not permitted."  *Mallak*, 2014 WL 1285807, at *6-9; *see also Nelson v. Jesson*, Civ. No. 13-340, 2013 WL 5888235, at *2 (D. Minn. Nov. 1, 2013) (holding that possession or acquisition of information need not be tangible

and information may be "obtained" through viewing); *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1133 (D. Minn. 2013) ("The plain language of the [statute] . . . makes clear that the personal information must be knowingly obtained 'for a purpose not permitted.'").  Here, Plaintiff alleges that she has adequately stated a claim against all Defendants for violating the DPPA.  Plaintiff also alleges that the Commissioners failed to adequately control and monitor access to her data contained in the Database.

In light of the Court's analysis in *Mallak*, the Court must now examine the facts alleged in this case and determine whether Plaintiff has stated a plausible claim.  *Roschen v. Wabasha Cnty.*, Civ. No. 13-2490, 2014 WL 3105032, at *6 (D. Minn. June 26, 2014) (stating that in DPPA cases the court must "attempt to discern cases which allege plausible claims from cases where plaintiffs engage in farfetched speculation that does not rise to the level of plausibility").  The Court concludes that Plaintiff sufficiently states plausible claims for violations of the DPPA for the remaining approximately 127 lookups, and that the claims cross the requisite "line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Here, Plaintiff alleges that her information was accessed a total of 987 times.[6] (Compl. ¶ 354.)  Plaintiff alleges that she was well-known across a number of Minnesota

---

[6]     In at least one response memorandum, Krekelberg alleges that her information was accessed over 975 times, but in her Complaint she alleges that her records were accessed 987 times.  (*Compare* Doc. No. 82 at 1, *with* Compl. ¶ 354.)  However, Plaintiff also alleges that she has eliminated potentially permissible lookups relating to traffic violations from those lookups included in her Complaint.  (Compl. ¶¶ 209, 283.) Presumably, this accounts for the difference in the number of lookups.  However, this

(Footnote Continued on Next Page)

cities for her work in security and loss prevention, and had frequent contact with law enforcement in that role.  (*Id.* ¶¶ 66-67.)  Plaintiff alleges that she joined the Minneapolis Park Police Department and worked as an agent and officer and was well-known through her work in that area as well.  (*Id.* ¶¶ 69-71.)  Plaintiff also alleges that she married a police officer and that many discussions about that relationship occurred throughout the law enforcement community.  (*Id.* ¶ 72.)  Plaintiff specifically alleges that she was asked questions about where she lives, was told to keep her address current, and was asked on a number of dates.  (*Id.* ¶¶ 73-75.)  Plaintiff alleges that she was also subjected to unwanted attentions and sexual advances.  (*Id.*)  Plaintiff further alleges that the unwanted attention increased after she received the Officer of the Year Award in 2010.  (*Id.* ¶¶ 76-78.)  Finally, Plaintiff alleges similar events occurred once she joined the Minneapolis Police Department in 2012.  (*Id.* ¶¶ 79-81.)  Plaintiff reports specific requests for her full name by police officers.  (*Id.*)

Plaintiff further alleges that the lookups of her information were "made by name, not license plate number."  (*Id.* ¶¶ 3, 283.)  Plaintiff also points to state reports and articles relating to the misuse of state databases, including the Database.  (*See id.* ¶¶ 381-82, 403.)  Finally, Plaintiff alleges that she has not committed any crimes or been investigated in any way that would support a "permissible" access of her data.  (*See, e.g.*, *id.* ¶¶ 104, 108, 389.)

---

(Footnote Continued From Previous Page)
does not alter the Court's analysis that all DPPA claims relating to lookups before December 17, 2009, are dismissed and those after that date remain.

As in *Mallak*, at this stage, these facts together sufficiently state a plausible claim that Plaintiff's records were not accessed for a permitted purpose.  *See Mallak*, 2014 WL 1285807, at *6-9.  In fact, this case is like *Mallak* in a number of ways.  In *Mallak*, the plaintiff alleged facts that supported an inference that the persons who accessed her records were interested in her based on her role as a local attorney.  *See id.*  Like in *Mallak* where most of the alleged lookups were in areas where the plaintiff worked or was involved in her role as an attorney, the same is true here of Plaintiff in her various roles associated with law enforcement.  *See id.*

The allegations in this case also show a troubling pattern with respect to lookups of Plaintiff's information.  Like in *Kampschroer v. Anoka County*, where the court found that the plaintiffs had raised a plausible inference of improper use based on concerning patterns, here, Plaintiff points to instances where certain personnel looked up her information at the same time they were asking for her full name and were asking her on dates.  *See* Civ. No. 13-2512, 2014 WL 4988405, at * 2-3, 10-11 (D. Minn. Oct. 7, 2014).  In addition, a number of lookups occurred at almost the same time, but in different cities where Plaintiff could not have been simultaneously.  *See id.* at *10 (noting that "various Defendants looked up [plaintiff's] information on the same day, sometimes within minutes of each other, and often with great frequency").  For example, on January 18, 2006, lookups occurred in Blaine and St. Paul within seconds of each other.  (*See* Doc. No. 82 at 17; *see also* Compl. Ex. A.)

Finally, the allegations of over 900 lookups adds to the reasonable inference that lookups of Plaintiff's information were occurring for an impermissible purpose, though the Court again acknowledges that this alone would be insufficient. *See Mallak*, 2014 WL 1285807, at *6-9.

In sum, Plaintiff sufficiently alleges facts to support a claim for a DPPA violation for lookups occurring after December 17, 2009, and therefore, Defendants' motions under Rule 12(b)(6) are denied to the extent they relate to such lookups.

## IV.   42 U.S.C. § 1983

Plaintiff's § 1983 claims do not survive Defendants' motions to dismiss.  The Court hereby adopts its prior reasoning in *Mallak* with respect to Plaintiff's § 1983 claims.  *Mallak*, 2014 WL 1285807, at *9-12; *see also Potocnik v. Carlson*, Civ. No. 13-2093, 2014 WL 1206403, at *12-16 (D. Minn. Mar. 24, 2014); *Kiminski v. Hunt*, Civ. No. 13-185, 2013 WL 6872425, at *9-15 (D. Minn. Sept. 20, 2013).  In sum, as detailed in a number of DPPA cases before courts in this District, including by this Court in *Mallak*, claims under § 1983 cannot stand because:  (1) the DPPA constitutes a comprehensive enforcement scheme and thereby precludes a remedy under § 1983; (2) there is no constitutional right to privacy in the information that Plaintiff seeks to protect; and (3) there is no reasonable expectation of privacy in the information that Plaintiff seeks to protect.[7]  *Mallak*, 2014 WL 1285807, at *9-12; *see also Rasmusson v.*

---

[7]   Plaintiff asserts claims under both the Fourth and Fourteenth Amendments based on alleged illegal searches and violations of the right to privacy.  The Court addresses both together in *Mallak*.  *See Mallak*, 2014 WL 1285807, at *9-12.

*Chisago Cnty.*, 991 F. Supp. 2d 1065, 1070-77 (D. Minn. 2014); *Potocnik*, 2014 WL 1206403, at \*12-16; *Kiminski*, 2013 WL 6872425, at \*9-15.  Thus, all of Plaintiff's § 1983 claims are dismissed in their entirety.[8]

## V.    Invasion of Privacy

With respect to Plaintiff's invasion of privacy claims, the Court dismisses those claims for failure to state a claim, consistent with its ruling in *Mallak*.  *See Mallak*, 2014 WL 1285807, at \*13-14.  As alleged, Plaintiff's claims do not rise to the requisite level of offensiveness to state a claim.  Thus, the Court adopts its analysis and holding in *Mallak* on this issue.  *Id.*  Thus, all Count V claims against all Defendants are dismissed in their entirety.

## VI.   Commissioners

The arguments Plaintiff presents in this case with respect to the Commissioners are substantially similar to those presented in *Mallak*.  As a result, the Court again concludes that all claims against the Commissioners must be dismissed in accordance with its analysis and holdings in *Mallak*, which it adopts herein.  *See Mallak*, 2014 WL 1285807, at \*14-16.  The Court also finds that *Mallak* addresses those issues that Plaintiff argues distinguish this case from *Kiminski*.  *See, e.g.*, *Mallak*, 2014 WL 1285807, at \*14-16 (holding that plaintiff had not sufficiently alleged an impermissible purpose with respect to the Commissioners on any grounds).  Here, Plaintiff's argument that the

---

[8]    To the extent Plaintiff seeks to assert a *Monell* claim, there is no such claim where there is no underlying violation of Plaintiff's constitutional rights.  *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007); *Mallak*, 2014 WL 1285807, at \*13.  As a result, any *Monell* claims against the City and County Defendants are dismissed.

Commissioners allowed access to the Database based on the status of certain employees goes no further in establishing an adequate impermissible purpose sufficient to state a claim. Further, to the extent Plaintiff makes any additional arguments that the Commissioners are subject to strict liability, the Court finds the reasoning on that issue in *Potocnik* persuasive and also adopts that reasoning herein. *Potocnik*, 2014 WL 1206403, at *4. Plaintiff's claims against the Commissioners are thus dismissed in their entirety.

## VII.   Qualified Immunity

To the extent the remaining Defendants assert that they are entitled to qualified immunity, the Court again adopts its reasoning in *Mallak. See Mallak*, 2014 WL 1285807, at *13. In sum, the Court finds that Plaintiff has adequately alleged the violation of a clearly established statutory right, but that Defendants may be able to establish that they are in fact entitled to qualified immunity as the case proceeds. At this stage, however, there is no qualified immunity.

## VIII.  Severance

The requests for severance by those Defendants whose claims have been dismissed in their entirety are moot. With respect to the remaining Defendants—City of Anoka, City of Becker, City of Columbia Heights, City of Coon Rapids, City of New Brighton, City of Plymouth, City of Ramsey, City of Roseville, City of St. Anthony, Minneapolis, Park & Rec, and Anoka County—the Court declines to sever those Defendants at this time. Currently, Plaintiff asserts a number of allegations relating to systemic issues across Minnesota, and legal issues are common to the parties. Thus,

severance is inappropriate at this time, however, the Court may sever the parties at a later time should it become necessary.

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant Anoka County's Motion to Dismiss or to Sever (Doc. No. [27]) is **GRANTED IN PART and DENIED IN PART** as follows:

a.     The Motion is **GRANTED** with respect to all lookups conducted before December 17, 2009, for Plaintiff's Count I DPPA claim.

b.     The Motion is **DENIED** with respect to all lookups conducted after December 17, 2009, for Plaintiff's Count I DPPA claim.

c.     The Motion is **GRANTED** with respect to Counts II, III, IV, and V.

2.     Defendants Carver County, Mille Lacs County, Sherburne County, Wright County, and Three Rivers Park District's Motion to Dismiss or to Sever (Doc. No. [32]) is **GRANTED** and all Counts against the County and Three Rivers Defendants are **DISMISSED WITH PREJUDICE**.

3.     Defendants City of Anoka, City of Apple Valley, City of Becker, City of Blaine, City of Bloomington, City of Brooklyn Center, City of Coon Rapids, City of Deephaven, City of Elk River, City of Glencoe, City of Fridley, City of Hastings, City of Jordan, City of Columbia Heights, City of Lakeville, City of Maple Grove, City of Maplewood, City of Medina, City of Minnetonka, City of Moundsview, City of

New Brighton, City of Plymouth, City of Ramsey, City of Richfield, City of Roseville,

City of St. Anthony, City of St. Francis, City of St. Joseph, City of Stillwater, and City of

Woodbury (together, "City Defendants") Motion to Dismiss or to Sever (Doc. No. 37) is

**GRANTED IN PART and DENIED IN PART** as follows:

a.      The Motion is **GRANTED** with respect to all lookups

conducted before December 17, 2009, for Plaintiff's Count I DPPA claims

against City of Anoka, City of Becker, City of Columbia Heights, City of

Coon Rapids, City of New Brighton, City of Plymouth, City of Ramsey,

City of Roseville, and City of St. Anthony.

b.      The Motion is **DENIED** with respect to all lookups

conducted after December 17, 2009, for Plaintiff's Count I DPPA claims

against City of Anoka, City of Becker, City of Columbia Heights, City of

Coon Rapids, City of New Brighton, City of Plymouth, City of Ramsey,

City of Roseville, and City of St. Anthony.

c.      The Motion is **GRANTED** with respect to Counts II, III, IV,

and V against City of Anoka, City of Becker, City of Columbia Heights,

City of Coon Rapids, City of New Brighton, City of Plymouth, City of

Ramsey, City of Roseville, and City of St. Anthony.

d.      The Motion is **GRANTED** in its entirety with respect to all

Counts against the following Defendants who are **DISMISSED WITH**

**PREJUDICE**:  City of Apple Valley, City of Blaine, City of Bloomington,

City of Brooklyn Center, City of Deephaven, City of Elk River, City of

Glencoe, City of Fridley, City of Hastings, City of Jordan, City of

Lakeville, City of Maple Grove, City of Maplewood, City of Medina, City

of Minnetonka, City of Moundsview, City of Richfield, City of St. Francis,

City of St. Joseph, City of Stillwater, and City of Woodbury.

4.     Defendant City of St. Paul's Motion to Dismiss or to Sever (Doc. No. [44])

is **GRANTED** and all Counts against City of St. Paul are **DISMISSED WITH**

**PREJUDICE**.

5.     Defendant Metropolitan Council's ("Met Council") Motion to Dismiss or

Sever (Doc. No. [48]) is **GRANTED** and all Counts against Met Council are

**DISMISSED WITH PREJUDICE**.

6.     Defendant City of Minneapolis' ("Minneapolis") Motion to Dismiss or to

Sever (Doc. No. 54) is **GRANTED IN PART and DENIED IN PART** as follows:

a.     The Motion is **GRANTED** with respect to all lookups

conducted before December 17, 2009.

b.     The Motion is **DENIED** with respect to all lookups

conducted after December 17, 2009.

c.     The Motion is **GRANTED** with respect to Counts II, III, IV,

and V.

7.     Defendant Ramsey County's Motion to Dismiss or to Sever (Doc. No. [57])

is **GRANTED** and all Counts against Ramsey are **DISMISSED WITH PREJUDICE**.

8.     Defendant Hennepin County's Motion to Dismiss or to Sever (Doc. No. [62]) is **GRANTED** and all Counts against Hennepin County are **DISMISSED WITH PREJUDICE**.

9.     Defendant City of Edina's ("Edina") Motion to Dismiss or to Sever (Doc. No. [66]) is **GRANTED** and all Counts against Edina are **DISMISSED WITH PREJUDICE**.

10.     Michael Campion and Ramona Dohman's Motion to Dismiss (Doc. No. [73]) is **GRANTED** and all Counts against Michael Campion and Ramona Dohman are **DISMISSED WITH PREJUDICE**.

11.     Defendant Minneapolis Park & Recreation Board's ("Park & Rec") Motion to Dismiss or to Sever (Doc. No. 107) is **GRANTED IN PART and DENIED IN PART** as follows:

a.     The Motion is **GRANTED** with respect to all lookups conducted before December 17, 2009.

b.     The Motion is **DENIED** with respect to all lookups conducted after December 17, 2009.

c.     The Motion is **GRANTED** with respect to Counts II, III, IV, and V.


Dated:  November 7, 2014                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge