UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Amy Elizabeth Krekelberg, | Civil No. 13-3562 (DWF/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| City of Minneapolis, et al., | |
| Defendants. | |

# INTRODUCTION

This matter is before the Court on Plaintiff Amy Elizabeth Krekelberg's second motion for attorney's fees and costs. (Doc. No. 907.) Defendant City of Minneapolis ("Minneapolis") supports the motion but disputes the calculations of reasonable fees and costs. (Doc. No. 917.) For the reasons set forth below, the Court grants the request and awards Krekelberg $895,021.03 in attorney's fees and $49,403.99 in costs.

# BACKGROUND

Nearly ten years ago, Krekelberg brought this case against Defendants, asserting claims under the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA") for alleged violations by numerous entities and their employees. (Doc. No. 1.) Specifically, Krekelberg alleged that Defendants impermissibly accessed her driver's license data on numerous occasions. (*Id.*)

Every phase of litigation in this case has been fiercely contested. Early on, Magistrate Judge Leung noted that "the litigation of this case has been a textbook

antithesis of Rule 1 [of the Federal Rules of Civil Procedure's] admonition" that parties should construe the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." (Doc. No. 430 at 1 (citing Fed. R. Civ. P. 1).)  Although the facts and law in this case "are decidedly manageable" (*Id.* at 1), the mutual lack of trust and refusal to compromise has caused this case to drag on.  The Court is hopeful, however, that the case has now come to a "merciful close." (*Id.* at 42.)

Following multiple dispositive motions, this case proceeded to trial in June 2019.  The jury returned a verdict in favor of Krekelberg and, after determining that Minneapolis's agents or employees impermissibly accessed Krekelberg's personal information 74 times on or after December 17, 2009, awarded her $285,000.00 as compensation for Defendants' improper conduct.  (Doc. No. 687.)  The jury also found that Defendants Olson and Young willfully or with reckless disregard violated the DPPA, and the jury awarded Krekelberg $300,000.00 to punish and deter them from similar violations in the future.  (*Id.*)

Defendants filed a number of post-trial motions.  (Doc. Nos. 720, 721, 722.)  The Court denied the motions but stayed the judgment pending appeal.  (Doc. No. 778 at 39.)  Additionally, Krekelberg moved for judgment to be amended to include equitable relief and both pre- and post-judgement interest at the rate mandated under Minnesota law.  The Court granted in part and denied in part Krekelberg's motion for equitable relief.  (*Id.* at 39-40.)  Moreover, the Court granted Krekelberg's request for post-judgment interest but denied her request for pre-judgment interest.  (*Id.* at 40.)

Krekelberg moved for attorney's fees totaling $1,309,730.75 and costs totaling $47,086.36. (Doc. No. 761 at 12.) Because Krekelberg was the prevailing party—having won a favorable verdict and significant damages—she was entitled to attorney's fees and costs under § 2724(b)(3) of the DPPA. Defendants supported the motion but contested the calculations, arguing that the submitted invoices were full of non-compensable tasks, block billing, vague descriptions, and "bloated" time entries. (Doc. No. 759 at 1.)

The Court declined to award fees and costs for Krekelberg's response to Defendants' objections to the fee petitions, because the burden is on the applicant to establish reasonable fees and expenses and Defendants raised "several arguably valid disputes with Krekelberg's petition." (Doc. No. 778 at 28-29.) Additionally, the Court reduced the lodestar 25 percent due to overstaffing and poorly described entries. (*Id.* at 29.) Lastly, the Court reduced the fee award by an additional 25 percent given various inefficiencies, including the fact that Krekelberg's attorneys often allocated tasks in the most expensive way possible. (*Id.* at 30.) The Court awarded Krekelberg a total fee award of $644,599.13. (*Id.*) The Court found Krekelberg's request for costs to be reasonable and awarded $47,086.36 in costs. (*Id.* at 31.)

Defendants then appealed, challenging the punitive-damages award and asserting that various evidentiary and jury-instruction errors entitled them to a new trial. *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 952 (8th Cir. 2021). Additionally, the City of Minneapolis argued that it could not be held vicariously liable for 72 of the 74 DPPA violations. *Id.* The Eighth Circuit affirmed the "[C]ourt's order declining to dismiss the vicarious-liability claims against the City [of Minneapolis]" but vacated the

judgment and reversed and remanded for a new trial based on evidentiary and jury-instruction errors. *Id.* at 960.

This case was then set for a second trial. Less than a week before trial was scheduled to begin, the parties notified the Court that they had reached a settlement. (Doc. No. 903.) Krekelberg now brings a second motion for attorney's fees and costs. (Doc. No. 907.) Minneapolis supports the motion but objects to the calculations. (Doc. No. 917.)

## DISCUSSION

Krekelberg is entitled to reasonable attorney's fees and costs under both the DPPA and the Minnesota Whistleblower Act ("MWA"). 18 U.S.C. § 2724(b)(3); Minn. Stat. § 181.935(a). "Just what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion," as the district court has extensive contact with the parties and is thoroughly familiar with the issues involved and work required in a case. *Greater Kan. City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984). The Court considers twelve factors when determining reasonable attorney's fees, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2020). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Id.* However, the "most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success as a whole." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (citation omitted). Where a plaintiff achieves only partial or limited success, the lodestar amount may be excessive. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). The burden is on the fee applicant to document the appropriate hours expended and hourly rates. *Fish*, 295 F.3d at 851.

Krekelberg seeks attorney's fees totaling $1,580,081.10. Minneapolis supports the motion but again argues that the calculations are unreasonable. Specifically, Minneapolis argues that Rule 68 of the Federal Rules of Civil Procedure limits the fees and costs that Krekelberg may recover. Minneapolis also argues that Krekelberg should not recover fees for work done during the first trial, as Krekelberg's attorneys' errors necessitated a second trial. Additionally, Minneapolis asserts that the Court must adopt its prior ruling regarding costs and fees for work done prior to the Eighth Circuit appeal (Doc. No. 778). And finally, Minneapolis urges the Court to further reduce Krekelberg's fees and costs, given her limited success in this case and her attorneys' block billing, vague descriptions, and "bloated" time entries. In response, Krekelberg argues that Rule 68 is inapplicable. Further, she requests that the Court reconsider portions of its prior attorney's fees and costs award. Lastly, Krekelberg asserts that the work done following the Eighth Circuit

5

appeal and up until the settlement of this case was reasonable and necessary, given the complexity of the issues. The Court addresses each argument in turn below.

**I.     Rule 68**

Rule 68 of the Federal Rules of Civil Procedure provides that, at least fourteen days before trial, a party "may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If the offeree declines the offer and ultimately obtains a judgement that "is not more favorable than the unaccepted offer," then "the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

Minneapolis argues that because Krekelberg rejected a Rule 68 offer in August 2017 and now settles for a lesser amount, Krekelberg must pay the costs incurred after that offer. *See Lang v. Gates*, 36 F.3d 73, 76 (9th Cir. 1994) (concluding that while Rule 68 refers to a subsequent "judgment," the rule similarly applies to cases "resolved by subsequent settlement"). In response, Krekelberg asserts the following: (1) Rule 68 is inapplicable because there has been no judgment; (2) Rule 68 does not apply to attorney's fees under the DPPA, only costs; and (3) even if Rule 68 did apply, Krekelberg obtained a more favorable result here. The Court need not address arguments one and two, because, as outlined below, the Court concludes that the settlement in this case is more favorable than the Rule 68 offer.

In August 2017, Defendants offered Krekelberg $201,000.00 "to allow Plaintiff to take judgment against them on all claims made or which could have been made in Plaintiff's Complaint." (Doc. No. 918-1 at 2.) Krekelberg rejected that offer. The

6

parties have now settled. (Doc. No. 909-2.) Defendants have agreed to pay Krekelberg $315,000.00 and, in return, Krekelberg releases "all claims, known and unknown, foreseen and unforeseen, arising on or before the date on which th[e] Agreement is executed." (*Id.* at 3-4.) In addition, the Agreement provides for various forms of injunctive relief, including the following: (1) Defendants Young, Olson, "and the other current employees whose actions were implicated in this suit" are required to "complete MyBCA online training"; and (2) Defendants Young and Olson are required to "sign a sworn Affirmation that they will never access Krekelberg's personal information through any state database again." (*Id.* at 6.)

Minneapolis argues that the Court should only look at the settlement award for Krekelberg's DPPA claims—which amounts to $185,000.00 in the Agreement—because the Rule 68 offer applied only to Krekelberg's DPPA claims. This argument is unavailing. The Rule 68 offer was to settle all claims against Defendants, and the settlement here—for $315,000.00—similarly applies to all claims that Krekelberg has asserted, or could have asserted, against Defendants. The settlement amount is significantly higher than the Rule 68 offer. Moreover, the settlement provides for important injunctive relief that was not included in the Rule 68 offer. Thus, the Court concludes that Rule 68 does not limit Krekelberg's recovery of attorney's fees and costs.

## II.     Substantial Success

Minneapolis asserts that the fee award should be reduced because Krekelberg has only achieved limited success in this case. "Where a plaintiff has achieved only limited or partial success, the court must consider in its award 'whether the expenditure of

counsel's time was reasonable in relation to the success achieved.'" *Wal-Mart Stores*, 223 F.3d at 772 (citation omitted). "If the plaintiff has won excellent results, he [or she] is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he [or she] did not win." *Id.* at 773 (quoting *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997)).

Minneapolis argues that Krekelberg could have settled the case in 2017 for $201,000 but instead dragged out the case another five years, which "only resulted in an additional $115,000." (Doc. No. 917 at 15-16.) This argument, however, goes both ways. Krekelberg obtained a favorable verdict in 2019 for $285,000 in compensatory damages and $300,000 in punitive damages—for a total of $585,000. The case could have ended there. Yet Defendants chose to appeal and litigate this case for another three years to save an additional $270,000. Defendants knew that during that time additional attorney's fees were accruing. The fact that this case has endured nine years of litigation is due to the decisions of all parties.

Additionally, Minneapolis argues that Krekelberg should not be compensated for fees related to the first trial, because Krekelberg's legal errors are what necessitated a new trial. The Eighth Circuit has held that a plaintiff is not entitled to fees "that [are] unreasonably caused by [the plaintiff's] own legal error." *Blackorby v. BNSF Ry. Co.*, 60 F.4th 415, 422 (8th Cir. 2023). This Court concludes, however, that the issues presented during trial, both related to evidence admitted at trial and the final jury instructions, were close calls. Krekelberg's behavior during trial was not "unreasonable." Thus, the Court will not reduce Krekelberg's fee award for the first trial.

Overall, Krekelberg "was successful on the claim at the heart of her case," specifically her DPPA claim. *Wal-Mart Stores*, 223 F.3d at 773 (internal quotations omitted). Moreover, this case furthered public interest in protecting private information from being unlawfully accessed by law enforcement. *See id.* The $315,000 settlement is significant, especially when compared to other DPPA cases. And the settlement amount is significantly more than the Rule 68 offer of $201,000. The Court will not reduce Krekelberg's fee award given the degree of success she has achieved in this case.

## III.     Prior Order

Next, Minneapolis asserts that the Court must adhere to its prior attorney's fees order (Doc. No. 778), which applied a 50 percent reduction in the fees for work done by Krekelberg's attorneys from the beginning of the case (May 8, 2013) up until the Eighth Circuit appeal (January 16, 2020). Krekelberg accepts the Court's prior decision in most respects but asks the Court to reevaluate the attorney's fees award for the time expended during the June 2019 trial and for the post-trial briefings.

Regardless of whether the Court is bound by its prior decision, the Court finds no reason to deviate. The Court's conclusions remain unchanged. Namely, the Court finds a 25 percent reduction appropriate due to vague or excessive hours billed. (*See* Doc. No. 778 at 29.) Instead of parsing out "which items in Krekelberg's fee petition relate to which overstaffed or poorly described entry," the Court applied a 25 percent reduction. (*Id.*) The Court finds this reduction to still be appropriate. Moreover, the Court deducted an additional 25 percent for inefficiencies. (*Id.* at 30.) The Court found that "Krekelberg's lawyers often allocated tasks in the most expensive way possible, with

9

more expensive counsel spending significant amounts of time drafting pleadings and researching now-familiar and frequently occurring issues and with attorneys performing administrative and clerical tasks such as proofreading." (*Id.* at 30.) Again, the Court's conclusion here stands. Thus, the Court adopts its prior ruling and awards Krekelberg $644,599.13 in fees for work completed from May 8, 2013, to January 16, 2020. (Doc. No. 778.)

## IV.     Appeal and Preparation for Trial

The Court is now left to determine attorney's fees from the date of appeal (January 17, 2020) until the signing of the Agreement (July 28, 2022). Krekelberg seeks $233,039.50 in fees for all legal work done for the appeal to the Eighth Circuit. In addition, Krekelberg seeks $277,739.00 for the Sapientia Law Group ("SLG") and $115,276.25 for Sieben Carey for the work done from the time of the Eighth Circuit's ruling through the signing of the Agreement. Krekelberg's attorneys assert that they spent 553.9 hours on the appeal and 839.2 hours preparing for the second trial and for settlement negotiations during this period. (*See* Doc. No. 911 at 21-23.)

Krekelberg's attorneys' requested rates range from $400 to $675 per hour, depending on the experience and skill of the attorney. The Court concludes that the hourly rates charged by Krekelberg's attorneys are reasonable in consideration of the expertise and experience of these attorneys. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."). Moreover, these rates fall within the typical range for attorneys who litigate civil matters in this region, including

DPPA matters. *Taylor v. City of Amboy*, No. 14-cv-722, 2017 WL 4075163, at *2 (D. Minn. Sept. 14, 2017) (awarding attorney's fees based on hourly rates between $400 and $450 in a DPPA case in 2017); *see Minn. Voters All. v. City of Saint Paul*, No. 19-cv-358, 2021 WL 1100901, at *4 (D. Minn. Mar. 23, 2021) (concluding that a rate of $600 per hour for a civil litigator with 35 years of experience was reasonable). And, importantly, Defendants do not appear to dispute these rates. The Court will use the requested rates in calculating the lodestar.

The Court concludes, however, that the time and resources spent on the appeal and trial preparation were excessive. For example, Krekelberg's attorneys logged over 150 hours on preparation for a fifteen-minute Eighth Circuit oral argument. (*See* Doc. No. 912-1 at 65-67.) These hours do not include time spent working on the appellate brief, which exceeded 300 hours. (*Id.* at 60-65.) While the vicarious liability issue was a novel issue presented on appeal, the Court nevertheless concludes that the amount of time spent on the appeal, and particularly the oral argument, was excessive. *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (concluding that 169.35 hours for preparation for an oral argument was unacceptable and awarding 24 hours); *Wilkett v. I.C.C.*, 844 F.2d 867, 878 (D.C. Cir. 1988) (concluding that 72.9 hours for preparation for an oral argument was "plainly excessive" especially considering that the attorneys were familiar with the case and had been involved in the litigation since the beginning).

Moreover, the Court finds it appropriate to discount the work done in preparation for the second trial, given the repetitiveness of some of the work and apparent inefficiencies. While, of course, trial preparation was necessary given the two-year gap

11

between the first and second trial, the Court concludes that the number of hours reported by Krekelberg's attorneys are excessive, given that the case had already gone to trial, and indicate redundant or otherwise inefficient work. The Court finds a 60 percent reduction of the lodestar for this period (January 17, 2020, to July 28, 2022) to be appropriate.

Lastly, many of Minneapolis's objections—related to non-compensable tasks, unidentified individuals, or unreasonably vague entries—refer to work that occurred prior to January 2020. Those entries were addressed in the Court's prior order and, as noted above, the Court considered Minneapolis's arguments at that time and consequently reduced Krekelberg's award for those entries by 50 percent. The Court will not readdress those arguments here, as they do not relate to entries from the appeal onward.

In sum, the Court concludes that a 60 percent reduction is necessary on work done for the appeal, preparation for the second trial, and settlement negotiations. The Court therefore awards $250,421.90 for work completed in the period from January 17, 2020, to July 28, 2022. In total, the Court awards Krekelberg $895,021.03 in fees.

## V.     Costs

Krekelberg is also entitled to costs. In the prior motion for attorney's fees and costs, Krekelberg requested $31,041.65 in costs for work done by SLG and $16,044.71 in costs for work done by Sieben Carey (Doc. No. 763 ¶ 43), for a total of $47,086.36, which the Court concluded was reasonable and supported by the record. (Doc. No. 778 at 31.) Now, Krekelberg seeks $32,822.32 in costs for SLG and $16,859.88 in costs for Sieben Carey. (Doc. No. 911 at 46.) The difference between these numbers equals the additional costs SLG and Sieben Carey claim to have incurred since the first petition for

attorney's fees and costs: $1,780.67 in additional costs for SLG and $815.17 for Sieben Carey, for a total of $2,595.84. Confusingly, Krekelberg asserts in her brief that she is only seeking "additional costs of $2,317.63." (Doc. No. 911 at 24.) Thus, the Court is left with two different amounts: $2,595.84 and $2,317.63.

Given these conflicting numbers, the Court is forced to do some math. After reviewing the record, the Court has determined that the additional costs incurred by SLG (adding together the appeal costs, court-ordered mediation costs, and pre-trial expenses) equals $2,317.63. (*See* Doc. No. 909 at 12-13.) And Sieben Carey has incurred an additional $818.47 in costs.[1] (*See* Doc. No. 908-2 at 2.) The total additional costs thus equal $3,136.10, which does not match either of the numbers provided by Krekelberg.

Due to Krekelberg's attorneys' errors, the Court will award the lesser amount requested by Krekelberg: $2,317.63. (*See* Doc. No. 911 at 24.) Thus, the total award for costs equals $49,403.99.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Amy Elizabeth Krekelberg's second motion for attorney's fees (Doc. No. [907]) is **GRANTED IN PART**. The Court awards Plaintiff $895,021.03 in attorney's fees and $49,403.99 in costs.

Dated: July 27, 2023               s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

[1] Sieben Carey concluded that their total additional costs were $815.17, omitting an additional charge of $3.30. (Doc. No. 908-2 at 2.)